**Mary S. SMITH, Plaintiff,**

v.

**Don CHAPMAN, d/b/a Don Chapman Motor Sales, Defendant.**

**Civ. A. No. A–75–CA–110.**

United States District Court, W. D. Texas, Austin Division.

April 28, 1977.

James G. Boyle, Austin, Tex., for plaintiff.

William R. Travis, Austin, Tex., for defendant.

## ORDER and MEMORANDUM GRANTING SUMMARY JUDGMENT

ROBERTS, District Judge.

Came on this day for consideration by the Court Motions for Summary Judgment which have been filed by both parties. After thorough review of the record, it is the opinion of this Court that Plaintiff's Motion should be granted and Defendant's Motion denied. It is further the decision of the Court that the Recommendation of the Special Master should be adopted as the opinion of this Court.

### STATEMENT OF FACTS

On October 8, 1974, a retail installment transaction entered into between Plaintiff and Defendant for the purchase of a 1969 Mercury was consummated. This credit transaction is evidenced by a "Motor Vehicle Contract" which obligated Plaintiff to pay the sum of One Thousand Four Hundred Fifty-Five and 40/100 Dollars ($1,455.40) in one (1) payment of One Hundred Dollars ($100.00) followed by eighteen (18) consecutive equal monthly payments of Seventy-Five and 30/100 Dollars ($75.30). At the time this transaction was consummated Defendant regularly extended credit for personal, family or household use.

On the Contract Defendant disclosed the "Cash Price (Including Sales Tax)" as One Thousand Four Hundred Dollars ($1,400.00) and the "Official Fees" as Fifty-Six Dollars ($56.00) when the "Cash Price" did not include the sales tax. The sales tax was disclosed as "Official Fees."

Plaintiff filed suit on July 9, 1975, alleging that the Contract, consisting of one (1) sheet of paper with terms and conditions of the agreement on both sides of the paper, violates the provisions of both the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, and Regulations promulgated thereunder at 12 C.F.R. § 226 *et seq.*, referred to as Regulation Z, and the provisions of the Texas Consumer Credit Code, Tex.Civ.Stat.Ann. art. 5069–7.01 *et seq.*, hereinafter referred to as the Credit Code. Both the Act and the Credit Code have as their primary purpose facilitating the informed use of credit by consumers. On January 5, 1977, a hearing was held before the Special Master on the Plaintiff's and Defendant's Motions for Summary Judgment.

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant contends that he is entitled to Summary Judgment because Plaintiff admitted in her deposition that she used the 1969 Mercury in connection with her business. Business or governmental credit is exempted from the Act. 15 U.S.C. § 1603(1).

■ The Act is aimed at providing consumers with information in order to be able to intelligently shop for credit. 15 U.S.C. § 1601, *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). A "consumer credit" transaction is one in which the credit is given *"primarily* for personal, family or household purposes." (emphasis added) 15 U.S.C. § 1602(h); 12 C.F.R. § 226.2(p). The term "business credit" is not defined but since the purpose of the Act is to provide information in "consumer credit" transactions, then it must be clear that business credit is something other than credit given primarily for personal, family or household purposes.

It stands to reason that the business credit exemption arises whenever the credit is given primarily for a business purpose and not just when the credit is given entirely for a business purpose. On the other hand the Act applies when the credit is given primarily for a personal, family or household use and not just when it is given entirely for a personal, family or household use.

■ Paragraph V of the Complaint alleges that Plaintiff purchased the 1969 Mercu-

ry for her personal use. Defendant in his Answer admitted the allegations contained in Paragraph V are true. It is a settled rule of law that what the Defendant admits in his answer is binding on him. *Freedom National Bank v. Northern Illinois Corp.*, 202 F.2d 601, 605 (7th Cir. 1953).

Even if Defendant had not admitted the transaction made the subject of this lawsuit was a consumer credit transaction, the deposition of Mary Smith clearly supports the view that she purchased the automobile primarily for her personal use. Plaintiff admitted she used the motor vehicle to run errands in connection with her work (Mary Smith Deposition, p. 5, lines 7–25). The use of the motor vehicle to run errands was only an incidental use of the motor vehicle. (Mary Smith Deposition, p. 63, line 25 to p. 64, line 3). The 1969 Mercury was Plaintiff's only automobile. (Mary Smith Deposition, p. 5, lines 12–16). Plaintiff was unequivocal in her deposition that the primary use of the motor vehicle was for her personal use. (Mary Smith Deposition, p. 51, lines 7–12).

As a matter of law, this transaction is a "consumer credit" transaction. Defendant's Motion For Summary Judgment is denied.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff alleges that Defendant failed to make proper credit disclosures under the Truth in Lending Act and under the Texas Consumer Credit Code. This Court has jurisdiction over the Credit Code claims as a result of its pendent jurisdiction over facts which are identical to the facts necessary to prove the federal claim. *Hurn v. Oursler*, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933); *United Mine Worker's v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Plaintiff contends that Defendant has committed six (6) different violations of the Truth in Lending Act, set forth as follows:

1. By disclosing the security interest only on the reverse side of the contract rather than on the same side of the page as, and above or adjacent to the customer's signature, in violation of Sec. 226.8(a)(1) of Regulation Z.

2. By disclosing the delinquency charge only on the reverse side of the contract rather than on the same side of the page as, and above or adjacent to the customer's signature in violation of Regulation Z.

3. By disclosing the interest rate after maturity only on the reverse side of the contract rather than on the same side of the page as, and above or adjacent to, the customer's signature, in violation of Sec. 226.8(a)(1) of Regulation Z.

4. By failing to itemize individually charges for official fees, in violation of Sec. 226.8(c)(4) of Regulation Z.

5. By failing to include in the finance charge the charges for license, certificate of title, and registration fees, which were not itemized and disclosed in violation of Sec. 226.4(a) of Regulation Z.

6. By failing to describe each amount included in the finance charge, in violation of Sec. 226.8(c)(8)(i) of Regulation Z.

The Truth in Lending Act sets forth required disclosures for transactions which are "other than open-end." The latter transactions are commonly referred to as "closed-end" transactions. Section 226.8 of Regulation Z sets forth the disclosures which must be made in a closed-end transaction. All required disclosures which are made, whether the transaction is open-end or closed-end, under the Act must be made "clearly, conspicuously and in a meaningful sequence". 12 C.F.R. § 226.6(a).

Plaintiff and Defendant by executing the "MOTOR VEHICLE CONTRACT" entered into a closed-end transaction. All of the required disclosures must be made on the same side of the page as the note evidencing the obligation or they can be made on one side of a separate statement which identifies the transaction. 12 C.F.R. § 226.8(a). In the case at bar the Defendant chose to make his disclosures on the Contract.

Plaintiff's first three contentions relate to the location of required disclosures. The description of security interest reserved by Defendant is found in paragraph number one (1) on the reverse side of the Contract. The security interest description is a required disclosure. 12 C.F.R. § 226.8(b)(5). Delinquency charges must also be disclosed. 12 C.F.R. § 226.8(b)(4).

As far as delinquency charges are concerned Defendant does indicate that a delinquency charge may be imposed on each installment "in default for a period of more than ten days in an amount not to exceed 5% of each installment or $5.00, whichever is less, or, *in lieu thereof, interest after maturity on each such installment not to exceed the highest lawful contract.*" (Emphasis added). This disclosure is made on the front of the Contract. On the reverse side of the Contract in paragraph number ten (10), Defendant discloses that "After maturity, this Texas Motor Vehicle Contract shall bear interest at the rate of 10% per annum."

Under Texas law had the Contract been silent Defendant could have received six percent (6%) interest after maturity. Tex. Civ.Stat.Ann. art. 5069–1.03. By reserving a higher rate Defendant imposed a delinquency charge. *Paer v. Aetna Finance Company*, (N.D.Ga.1976) C.C.H. Consumer Credit Guide, par. 98,353.

The disclosure on the front of the Contract that interest after maturity would be at the "highest lawful contract rate" did not fulfill the requirement of a "clear" disclosure as required by Section 226.6(a) of Regulation Z. To the average consumer the "highest lawful contract rate" has little or no meaning. The disclosure which satisfies Section 226.6(a) is contained in Paragraph number ten (10) on the reverse side of the Contract.

Defendant claims that he does not need to make the required disclosures on the front side of the Contract because of Interpretation 226.801 of the Federal Reserve Board. This Interpretation allows creditors to make required disclosures on both sides of a combination contract and security agreement under certain very limited circumstances. This Interpretation is applicable only when all the disclosures cannot be put on one side because the form will not accommodate all the disclosures because it is designed for processing by mechanical and electronic equipment. Under this circumstance, a creditor must give the "notice" set forth in the Interpretation and the customer's signature must follow the full content of the document before any of the required disclosures can appear on the reverse side of the contract. See F.R.B. Letter # 825, C.C.H. Consumer Credit Guide, par. 31,147; F.R.B. Letter # 1016, C.C.H. Consumer Credit Guide, par. 31,365.

There is nothing to indicate in the record that Defendant's contract was designed for electronic or mechanical processing. No signature line appears on the reverse side of the Contract following the full content of the document. Defendant may not take advantage of Interpretation 226.801.

The security interest description and the ten percent (10%) interest after maturity disclosure should have been set forth on the frontside of the Contract. Defendant has violated Section 226.8(a)(1). See *Philbeck v. Timmers Chevrolet, Inc.*, 361 F.Supp. 1255 (N.D.Ga.1973) at p. 1260 footnote # 6, rev'd on other grounds, 499 F.2d 971 (5th Cir. 1974); *Burton v. The Jury-Rowe Company*, 4 C.C.H. Consumer Credit Guide, par. 98,586 (Mich.Dist.Ct.1975); *Perkins v. Don Ford Auto Sales, Inc.*, 2 Pov.L.Rptr. par. 21,741 (W.D.Ky.1975).

Plaintiff alleges that Defendant violated the Act by not itemizing certain official fees, namely certificate of title and transfer of title fees and Plaintiff has further alleged that Defendant violated the Act by not including the cost of such fees in the finance charge. Based on the record there is no reason to believe that such violations occurred. There is nothing in the record to indicate that Plaintiff was charged either certificate of title or transfer of title fees in connection with her purchase of the 1969 Mercury.

The last contention made by Plaintiff is that Defendant failed to describe each amount included in the "finance charge." 12 C.F.R. § 226.8(c)(8)(i). According to Section 226.4(b) of Regulation Z certain charges need not be included in the finance charge if individually itemized. Taxes which are not included in the cash price and are itemized may be excluded from the finance charge. 12 C.F.R. § 226.-4(b)(3). It is undisputed in the case at bar that the sales tax was excluded from the cash price but it was not individually itemized. For that reason it should have been included in the finance charge. *Simmons v. American Budget Plan, Inc.*, 386 F.Supp. 194 (E.D.La.1974).

Plaintiff claims that Defendant violated two disclosure provisions of the Credit Code, the Texas credit disclosure law, in connection with credit sale of the 1969 Mercury. First, Plaintiff contends that the Fifty-Six Dollars ($56.00) disclosed as "official fees" on the Contract was in fact a charge not attributable to such fees. The Fifty-Six Dollars ($56.00) was for sales tax which clearly is not an "official fee" as defined by the Credit Code. Tex.Civ.Stat.Ann. art. 5069–7.01(g). For this reason Defendant violated the provision of art. 5069–7.02(6)(e) in improperly disclosing the aggregate of official fees.

Secondly, Plaintiff alleges that Defendant violated the Credit Code by failing to "clearly and conspicuously" disclose that physical damage insurance was required in connection with the transaction. Tex.Civ. Stat.Ann. art. 5069–7.06(3). There is no dispute between the parties that such insurance was required. On the reverse side of the contract in paragraph eleven ( # 11) Plaintiff "agrees to keep said motor vehicle insured in Seller's favor during the life of this obligation." On the front side of the Contract there is no mention that such insurance is required for the term of the Contract. The statement in paragraph number eleven ( # 11) is in the same size print and type as the rest of the writing on the reverse side. There is nothing that would call a person's attention to this clause.

All of the disclosures required by the Truth in Lending Act must be made clearly and conspicuously. 12 C.F.R. § 226.6(a). Under Truth in Lending default and delinquency charges are required to be disclosed. 12 C.F.R. § 226.8(b)(4). In a recent case a court held that the disclosure of default and delinquency charges was not conspicuous. *Jefferson v. Mitchell Select Furniture Co., Inc.*, 321 So.2d 216 (Ala.Civ.App.1975).

Examination of the contract taken by plaintiff discloses the default or delinquency charges to be in extremely fine print without any emphasis from the other portion of the text where located. Though neither the Act nor Regulation Z defines the terms clearly and conspicuously, we find a definition of such terms in our own Uniform Commercial Code, Title 7A, Sec. 1–201(10). There it is said:

'A term or clause is conspicuous when it is so written that a reasonable person . . . ought to have noticed it . . . Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color.'

With that definition, the required disclosures of the default or delinquency charges is not as a matter of law clear and conspicuously made in the contract. *Jefferson*, supra, at p. 222.

The term "conspicuous" has frequently been construed in connection with Section 2–316(2) of the Uniform Commercial Code relating to the exclusion or modification of warranties. The Fifth Circuit, considering an attempted disclaimer clause in a warranty form, concluded:

Examination of a photostatic copy of the warranty (in the record) promptly reveals that the warranty form is printed in the same size type throughout. We hold that the requirement of conspicuosity was not met. *Holcomb v. Cessna Aircraft Co.*, 439 F.2d 1150, 1158 (5th Cir. 1971).

In a contract for the sale of farm machinery where the disclaimer of warranties clause was on the back of the contract under the bold letter heading of "warranty

and agreement," a Kentucky Appellate Court held:

> In the instant case the exclusionary language was not in 'larger or other contrasting type or color' as contemplated by the statutory definition . . . Besides being in ordinary type, the exclusion was on the *back* of the instrument, with nothing on the front, except some words likewise in ordinary type, to direct attention to it. Such a location alone has been held to put the exclusion out of the conspicuous class. *Massey-Ferguson Inc. v. Utley*, 439 S.W.2d 57, 59 (Ky.1969).

In *Hertz Commercial Leasing Corp. v. Transportation Credit Clearinghouse*, 59 Misc.2d 226, 298 N.Y.S.2d 392 (1969), a standard form contract for the lease of equipment which contained disclaimer of warranties in the body of the contract was before the court. The court found that words which have been set forth in type which is of the same size and style of print as part of a much larger paragraph and in same size and style or type as the remainder of the contract is not "conspicuous" within the meaning of U.C.C. § 1–201(10). See *Zabriskie Chevrolet, Inc. v. Smith*, 99 N.J.Super. 441, 240 A.2d 195; *Boeing Airplane Co. v. O'Malley*, 8 Cir., 329 F.2d 585; *Hunt v. Perkins Machinery Co.*, 352 Mass. 535, 226 N.E.2d 228 (1967).

If a court held that the required physical damage insurance disclosure appearing in fine print on the reverse side of Plaintiff's contract was "conspicuous", then, that term would be rendered meaningless. Such a holding would be an open invitation to use fine print to make required disclosures and thus avoid the purpose of both the Credit Code and Truth in Lending Act in aiding consumers in the informed use of credit. Defendant has violated the Credit Code by not disclosing "conspicuously" that physical damage insurance was required for the life of the obligation.

██ Defendant has asserted the bona fide error defense under both the Truth in Lending Act and the Credit Code. 15 U.S.C. § 1640 and Tex.Civ.Stat.Ann. art. 5069–8.01. All of the violations of the Truth in Lending Act and the Credit Code detailed above are violations which appeared in every one of the three hundred and seventy-four (374) retail installment contracts executed by Defendant in 1974. It is inconceivable that Defendant could make a colorable argument in favor of bona fide error in light of the same violations appearing on each retail installment contract and in light of recent judicial construction of the term "bona fide error." *Palmer v. Wilson*, 502 F.2d 860 (9th Cir. 1974); *Houston v. Atlanta Federal Savings & Loan Ass'n*, 414 F.Supp. 851 (N.D.Ga. 1976); *Moore v. Sabine National Bank of Port Arthur*, 527 S.W.2d 209 (Tex.Civ.App. —Austin, 1975, writ ref'd n.r.e.).

There being no disputed material facts, and the law clearly mandating recovery, summary judgment for Plaintiff is proper. Plaintiff is entitled to recover under both the Truth in Lending Act and the Texas Consumer Credit Code the sum of twice the finance charge. It is accordingly

ORDERED, Adjudged and Decreed that Plaintiff's Motion for Summary Judgment be and is hereby Granted, that Plaintiff Mary Smith have and recover from Defendant Don Chapman d/b/a Don Chapman Motor Sales the sum of Nine Hundred and Ninety-Five Dollars and No Cents ($995.00), for violations of the Truth in Lending Act and the Texas Consumer Credit Code, and that pursuant to Fed.R.Civ.Proc. 56(d), further proceedings be had on the issue of the amount of attorney's fees to be awarded Plaintiff. The parties may, without prejudice to their positions on other issues, submit by March 11, 1977, a stipulation as to reasonable attorney's fees to be awarded Plaintiff, which stipulation shall provide the basis for a final judgment in this cause. In the alternative, should the parties not submit such a stipulation, then, Plaintiff's attorney shall file an affidavit of legal services by March 14, 1977, and Defendant should file any objection thereto by March 24, 1977. The Clerk shall then notify the parties when a hearing may be had on the issue of attorney's fees.

ENTERED the 22nd day of March, 1977, at Austin, Travis County, Texas.

## MEMORANDUM OPINION AND ORDER ON ATTORNEY'S FEES

The Court held a hearing in this case on April 7, 1977, in order to determine the amount to assess as attorney's fees in this action. After carefully considering the evidence adduced at the hearing, the Court enters this Memorandum Opinion and Order, which shall constitute findings of fact and conclusions of law.

Plaintiff's attorney was retained in June, 1975 to represent her in this Truth-in-Lending case against Defendant. The complaint was filed in July, 1975, and ultimately the case was referred to a Special Master. On March 1, 1977, the Special Master recommended that the Court find that Defendant had violated certain provisions of the Truth-in-Lending Act, regulations promulgated pursuant to the Act, and the Texas Consumer Credit Code when he sold Plaintiff a used car in 1974. The Court adopted the findings of the Master as the opinion of the Court on March 22, 1977, when Plaintiff's motion for summary judgment was granted. Defendant's violations of the Truth-in-Lending Act and the Texas Consumer Credit Code are set forth in the order granting summary judgment for Plaintiff. Plaintiff recovered the maximum amount allowable under the law, which was $995.00.

 Plaintiff is entitled to recover a reasonable attorney's fee for successfully presenting this case. See 15 U.S.C. § 1691e(e). In awarding attorney's fees the Court has considered the following factors: 1) the time and labor required, 2) the novelty and difficulty of the questions, 3) the skill requisite to perform the legal service properly, 4) the preclusion of other employment by the attorney due to acceptance of the case, 5) the customary fee, 6) whether the fee is fixed or contingent, 7) time limitations imposed by the client or circumstances, 8) the amount involved and the results obtained, 9) the experience reputation, and ability of the attorney, 10) the "undesirability" of the case, 11) the nature and length of the professional relationship with the client, and 12) awards in similar cases. *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).

 Plaintiff's attorney, James G. Boyle, has a practice that is limited primarily to consumer law. He has been actively engaged in consumer law for several years as an attorney representing consumers and as a speaker at consumer law seminars. The evidence regarding attorney's fees indicates that he spent approximately 100 hours working on this case, which involved several novel questions requiring an unusual amount of research. Plaintiff recovered the maximum amount allowable, and although this amount is relatively small, courts generally will not look to the size of the damage award in determining a reasonable attorney's fee in consumer cases. *See Sosa v. Fite*, 498 F.2d 114 (5th Cir. 1974).

After carefully considering all the aforementioned factors and all the evidence in the case, the Court concludes that Plaintiff is entitled to recover an attorney's fee of $3,500.00. It is accordingly

ORDERED, ADJUDGED and DECREED that Plaintiff recover from Defendant $3,500.00 as reasonable attorney's fees; that Defendant pay all costs taxable under 28 U.S.C. § 1920; and that the Clerk of the Court enter final judgment for Plaintiff.

Entered this 28 day of April, 1977, at Austin, Texas.