Ella TOWER et al., Plaintiffs,

v.

HOME CONSTRUCTION COMPANY OF MOBILE, INC., Defendant.

Ex parte Paralee MOSS, Plaintiff-Intervenor.

Civ. A. No. 76–621–H.

United States District Court, S. D. Alabama, S. D.

Sept. 29, 1978.

Gregory B. Stein and Larry T. Menefee, Mobile, Ala., for plaintiffs Ella Tower et al.

H. Diana Hicks, Mobile, Ala., for plaintiff-intervenor Paralee Moss.

Richard L. Thiry, Mobile, Ala., for defendant Home Construction Co., Inc.

HAND, District Judge.

This action was commenced through the filing of a complaint by the plaintiff class representatives who sought certification of a class to prosecute this action. The lawsuit raises various claims of violations of the Truth-In-Lending Act, Title 15, U.S.C.A. § 1601 *et seq.* On May 20, 1977 the Court entered its Order certifying the class and the Notice to class members was approved on the same day. On June 20, 1977 the Court approved the class settlement agreed to by the parties. The settlement gave class members three options:

(a) *Exclusion from the class*—under this election the class members could bring his or her own lawsuit;

(b) *Receipt of a 15% reduction*—under this election, the class members indebtedness to the defendant would be reduced by 15% of the remaining balance;

(c) *Rescission or cancellation of the contract*—the final election would allow the class member's contract to be rescinded or cancelled, with the class member to remit to the defendant the fair value of the work done on his or her property.

The Court's Order approving the settlement gave class members until June 24, 1977 to either accept the settlement's rescission provisions under subsection (c) or opt out of the class in accordance with subsection (a). Those failing to respond were deemed to have accepted the 15% reduction provided by subsection (b). Intervenor Moss responded by electing to rescind, and her rights in this action are accordingly limited by the provision of subsection (c).

On December 8, 1977 the Court referred the Moss matter, along with that of four other intervenors, to the United States Magistrate for the Southern District of Alabama, directing the Magistrate to give notice to these "class members to appear before him at a time stated where an effort shall be made by the Magistrate, with the assistance of counsel, to ascertain if the . . . class members desire to compromise their claims under their decision to rescind, whether they have counsel or desire to obtain counsel and proceed to a hearing as spelled out in the settlement agreement or whether they wish to change the option selected pursuant to the settlement agreement . . . ." In response to the notice from the Magistrate setting the matter for a hearing on December 21, 1977, Moss phoned the Magistrate from Detroit and stated that it would be impossible for her to attend. The Magistrate then directed Moss to take her notice to her Detroit lawyers and to reduce to writing her answers to the questions concerning whether she wished to compromise the claim or rescind the contract, sending her response to this Court immediately. In response to this Moss sent the following letter to the Magistrate on December 30, 1977:

Dear Sir:

I am with you all the way against the high cost of improvement the Home Construction Company cost me.

The reason I can not come to Mobile is, I had just come from New York seeing my brother in the hospital and to see him go to a nursing home.

I am pleased what ever actions are taken by your office and thank you.

Respectfully yours,

/S/ Paralee Moss

This Court took over consideration of the Moss matter on February 21, 1978 by a letter to Moss from the Court. Enclosed with the letter was the settlement agreement and the Court in the body of the letter tried to explain the terms of the settlement to Moss. The Court noted that Moss had elected to rescind, but informed her that she could change her election at any time within 10 days of the Court's letter. Moss was instructed that if she did not reply her rescission election would be binding and the matter would be set for hearing by the Magistrate on the rescission.

On March 27, 1978 the Court entered an order noting that Moss had not responded to the February 21, 1978 letter in accordance with the Court's instructions and that she was thus limited to her rescission claims. On this basis the Court ordered that Moss "appear before the United States Magistrate for the Southern District of Alabama, either in person or through her counsel, within ten days from the date of this Order to prove to said Magistrate what the reasonable value of the improvements on her property were and to aid the Court in establishing the payment that is to be made to the defendant."

On April 13, 1978 attorney H. Diana Hicks filed a notice of appearance on behalf of Moss. On April 19, 1978 attorney Hicks filed, on Moss' behalf, a complaint seeking rescission of the contract and mortgage entered into by Moss and the defendant under

the federal Truth-In-Lending Act raising various other claims under the Alabama Consumer Finance Act, *Ala.Code*, § 5–19–1 *et seq.* and under common law.

The defendant has moved to strike the claims arising under state law and for summary judgment on the claims set out under the federal statutes. The Court heard argument on these motions on September 22, 1978, and the Court, having considered the record, the arguments and briefs of counsel, the affidavits submitted both in favor of and in opposition to the motions, together with the applicable law, finds as follows:

## FINDINGS OF FACT

1. Intervenor Moss is a resident citizen of the State of Michigan, the defendant is a corporation organized and existing under the laws of the State of Alabama with its principal place of business being in Mobile, Alabama. Jurisdiction of this Court is sought to be invoked pursuant to Title 15, U.S.C.A., § 1640 with respect to the federal Truth-In-Lending claims, and the intervenor seeks to litigate state claims arising under sections 5–19–12 and 5–19–19 of the *Alabama Code*, together with common law counts of breach of contract and fraud, pursuant to this Court's pendent jurisdiction. The intervenor also seeks rescission of the contracts and mortgages entered into between the parties pursuant to Title 15, U.S.C.A., § 1635.

2. Intervenor Moss presently resides at 2295 West Grand Boulevard, Apartment 203, in Detroit, Michigan. She is currently employed in the Detroit area and intends to remain in that area until she retires, which will be at least 1979 and perhaps later (Affidavit of Paralee Moss).

3. The property in issue in this lawsuit is located at 612 Seminary Street in Prichard, Alabama. The property was bought by Moss' mother and the house that presently sits on the property was built around 1928. Moss resided in this house until she was grown, and her mother and her sister resided in the house until 1957, when her mother died, leaving the house jointly to Moss and her sister. Moss' sister continued to reside in the house until her death in 1973, at which time title vested exclusively in Moss. The house remained unoccupied for more than a year after the sister's death (Affidavit of Paralee Moss).

4. On July 14, 1975 Moss contracted with and received an extension of credit from the defendant in connection with certain repairs and improvements the defendant was to make on this house owned by the intervenor. A mortgage was taken on the property to secure the extension of credit. On July 23, 1975 Moss entered into another contract with the defendant for some additional work at a cash price of $120.00.

5. There is a dispute of fact concerning Moss' future plans for the house at the time of the execution of the contracts and the extension of credit. Moss avers that the house was in poor condition, with a particularly poor roof, and that she entered into the improvement contracts with the intent that she would return to Prichard from Detroit and reside in the house upon her retirement. The defendant contends the improvements had a business motivation and that Moss had the work done so that she could rent the property while she remained in Detroit. Since this matter is before the Court on the defendant's motion for summary judgment, the Court must give credence to the intervenor's averments and accept as true her characterization of her intentions with respect to the transactions in question.

6. Shortly after execution of the contracts while Moss was still in the Prichard area and while the improvements were still being constructed, Moss had a discussion with Mary Thompson about renting the property. According to Moss' affidavit Thompson initiated the conversation and Moss acquiesced in the rental in the hope that the presence of a resident in the house would discourage damage to the property before she moved back in. Also, she concluded that the rent payments would help defray the repair, tax, and insurance expenses connected to the house, so she agreed in August of 1975 to rent the house to Thompson for $60.00. These averments

are contradicted by Thompson's affidavit, who avers that Moss spoke to her in July of 1975 and told her that she was having her property repaired for the purpose of rental. Moss told Thompson that the rent would be $60.00 per month, so Thompson gave Moss a $40.00 deposit on July 30, 1975, the receipt for which Thompson still possesses. Thompson moved into the house before the repairs were completed and has lived there continuously since then.

## CONCLUSIONS OF LAW

1. The intervenor asserts that this Court has jurisdiction pursuant to Title 15, U.S. C.A., § 1640 to remedy the federal statutory violations alleged in the complaint, and pendent jurisdiction to remedy the alleged state statutory violations, and common law violations. Since the Court is convinced that the jurisdictional issue entails no dispute of material fact, summary judgment is proper.

2. The jurisdictional question is whether the July 14, 1975 contract and the July 23, 1975 contract were transactions of such a nature that this Court's jurisdiction under the federal Truth-In-Lending Act, Title 15, U.S.C.A. § 1601 *et seq.* might be invoked. Section 1603(1) exempts consumer credit transactions that involve extensions of credit for business or commercial purposes, and the defendant contends that the Moss contracts involved such purposes. Clearly then the ultimate jurisdictional question in this case is whether the Moss transactions are characterized as having business or commercial purposes, or whether they are deemed to be transactions within the comprehension of the Truth-In-Lending Act.

3. Each party has cited cases in support of their respective positions. Moss relies upon *Gerasta v. Hibernia National Bank*, 411 F.Supp. 176 (E.D.La.1975), aff'd 575 F.2d 580 (5th Cir. 1978), and *Smith v. Chapman*, 436 F.Supp. 58 (W.D.Tex.1977).

In *Gerasta* the plaintiffs were residents of New Orleans who were renting an apartment at 4306 Prytania Street at the time of the transaction in question. They purchased a two-family residence located in another part of town (Valence Street) with funds procured through a government loan and secured by a V.A. mortgage. Although both portions of the two-family residence were initially rented to third parties for a time, it was the ultimate intention of the plaintiffs to reside in one portion of the building and rent the other. They actually did move in about 1½ years after the purchase and resided in the house during the lawsuit. The transaction in question in the suit was a home improvement loan entered into after the purchase but prior to the time when the plaintiffs actually moved in. When the plaintiffs filed suit alleging that the defendant-creditor had failed to make the necessary disclosures in accordance with the Truth-In-Lending Act, the defendant contended that this was an exempted commercial transaction since the property in question was rental property at the time of the extension of credit. The District Court disagreed and concluded that this transaction was not one for business or commercial purposes, finding that the plaintiffs' intention in entering into the transaction was for "repairing and/or improving their intended residence, prior to occupancy." 411 F.Supp. at 185. The Fifth Circuit affirmed this holding without discussion, 575 F.2d at 583, although it did reverse on other grounds.

*Chapman, supra*, dealt with an entirely different situation. The plaintiff had purchased a 1969 Mercury automobile from the defendant by means of a credit transaction in which the defendant extended credit to the plaintiff for the purchase price of the vehicle. When the plaintiff filed suit alleging that the proper disclosures under the Truth-In-Lending Act had not been made, the defendant filed for summary judgment on the basis of the plaintiff's deposition testimony that she used the automobile in connection with her business. The District Court found that the plaintiff had purchased the vehicle primarily for her personal use, and concluded that the primary use of the vehicle was the test to use in characterizing the transaction. The Court ruled that a transaction is not exempted when "the credit is given primarily for a person,

family, or household use and not just when it is given entirely for a personal, family or household use." 436 F.Supp. at 61.

4. The defendant cites two cases, *Sapenter v. Dreyco, Inc.*, 326 F.Supp. 871 (E.D.La. 1971), *aff'd* 450 F.2d 941 (5th Cir. 1971), *cert. denied*, 406 U.S. 920, 92 S.Ct. 1775, 32 L.Ed.2d 120 (1972), and *Puckett v. Georgia Homes, Inc.*, 369 F.Supp. 614 (D.S.C.1974).

The plaintiffs in *Sapenter* owned two separate pieces of property in New Orleans, their residence at 5822 Baccich Street and a six-unit apartment building at 2408 Chartres Street. To avoid foreclosure on the mortgages on the rental property, the plaintiffs executed a third mortgage on their residence on Baccich Street. The plaintiffs later filed suit to have the third mortgage rescinded under the Truth-In-Lending Act, alleging that they were not afforded the appropriate disclosures. The defendant contended, *inter alia*, that the mortgage was an exempted transaction and that the suit ought to be dismissed. The District Court agreed, ruling that the "extension of credit to the plaintiffs . . . was certainly not for 'personal, family, household or agricultural purposes,'" but rather was for the purpose of extending "a past due obligation which plaintiffs had incurred on rental property which they purchased and owned as an investment." 326 F.Supp. at 873. The Fifth Circuit summarily affirmed the decision without a written opinion, *Sapenter v. Dreyco, Inc.*, 450 F.2d 941 (5th Cir. 1971).

In *Puckett*, the plaintiff owned a mobile home that he was renting to a tenant. This mobile home was destroyed by a fire so the plaintiff negotiated for the purchase of a new one with the defendant. The plaintiff's testimony revealed that although he sought the new mobile home as a replacement for his tenant, he intended eventually to reside in the replacement home himself. Although the plaintiff did not aver the time at which he intended to take up residence in the replacement home, the evidence was clear that the plaintiff was not in the business of renting mobile homes and had never owned more than one at a time. After the

plaintiff purchased the mobile home with the aid of a credit extension from the defendant, the plaintiff filed suit alleging non-disclosure of items required by the Truth-In-Lending Act. The District Court concluded that the credit extension was an exempted transaction not subject to the Truth-In-Lending Act disclosures, finding that the credit extension was made for a business, rather than a personal, family, or household purpose.

5. These decisions, while instructive to some extent, are all qualitatively distinguishable from the matter *sub judice* and none is controlling. Clearly *Gerasta* stands, as Moss avers, for the proposition that a landowner obtaining improvements on his or her property with the intent of residing there does not have a business purpose. That is not this case. Similarly, *Chapman* clearly indicates that when the primary purpose of a credit transaction is personal, the exemptions do not lie. The facts of this case do not fall squarely in line here either.

On the other hand, the cases supplied by the defendant are no more helpful to the Court. *Sapenter* merely makes clear that a business purpose will exempt a credit transaction from the required Truth-In-Lending disclosures, and *Puckett* extends the business purpose definition to include property obviously obtained with a business purpose with a collateral intent to later adapt it to personal use. None of these decisions provides the Court with what is obviously needed under the facts of this case—a definition of "business or commercial purpose" as envisioned by section 1603.

■ 6. Lacking pure definition, the Court chooses to adopt the tack taken by the District Court in *Chapman*:

A "consumer credit" transaction is one in which the credit is given "*primarily* for personal, family or household purposes." 15 U.S.C. § 1602(h); 12 C.F.R. § 226.6(p). The term "business credit" is not defined but since the purpose of the Act is to provide information in "consumer credit" transactions, then it must be clear that business credit is something other than

credit given primarily for personal, family or household purposes.

436 F.Supp. at 61 (emphasis in original).

■ On this basis, the Court concludes that the credit transactions involved in this case were commercially motivated and that the defendant is therefore exempted from the disclosure provisions of the Truth-In-Lending Act under section 1603. There is no question but that the improvements make the basis of the credit transactions were motivated by a purpose other than a purely personal intent to make the house amenable to the plaintiff to move in, as was the case in *Gerasta*. The Court does not find the fact that the intervenor ultimately intended to reside in the house controlling either, since it is unlikely that one would repair a dwelling that he or she did not intend to use for at least four years and subject himself or herself to possible further damage to the improvements during the interim. The Court accepts the plaintiff's explanation of her intentions but finds from the facts surrounding the transactions that they were imbued with a commercial, not personal, purpose. Accordingly, the Court is of the opinion that the motion for summary judgment is due to be granted on the basis that this Court lacks jurisdiction under Title 15, U.S.C.A., § 1601 *et seq.* to consider the merits of this lawsuit.

7. The Court having concluded, *supra*, that it is without jurisdiction to entertain the federal claims raised in this lawsuit, the defendant's motion to strike the claims of Moss arising under the Alabama Consumer Finance Law and under the common law are granted as lacking adequate jurisdictional basis.