Roberto BUSTAMANTE et ux.,
Plaintiffs-Appellants,

v.

FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF SAN ANTONIO,
Defendant-Appellee,

Montelongo Lumber Company,
Defendant.

No. 78–2370.

United States Court of Appeals,
Fifth Circuit.

June 16, 1980.

---

Dennis K. Drake, San Antonio, Tex., for plaintiffs-appellants.

Kampmann, Church & Burns, Walter W. Church, San Antonio, Tex., for defendant-appellee.

Before THORNBERRY, FRANK M. JOHNSON, Jr., and HENDERSON, Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

Appellants, Roberto and Bertha Busta-mante, filed this action in the district court alleging several violations of the Truth-in-Lending Act in a loan transaction. The lower court found that there was a misstatement of the annual percentage rate and awarded the maximum of $1,000.00 damages to each plaintiff and $1,000.00 in attorney's fees, but denied rescission of the credit contract. We hold that the Bustamantes were entitled to rescind the transaction but were not entitled to forfeiture of the loan, and we also remand for a redetermination of attorney's fees.

On February 25, 1976, the Bustamantes received a home improvement loan for $9,800.00 from the defendant-appellee, First Federal Savings and Loan Association of San Antonio, to finance construction of a room addition to their home. The appellants were given a disclosure form and a rescission notice. The disclosure form stated that the annual percentage rate of the loan was 11.69. On August 18, 1976, prior to completion of the room addition, the Bustamantes notified First Federal of their election to rescind the transaction, using the form provided by the creditor. First Federal responded to the notice by incorrectly informing the appellants that they must prior to rescission return any monies involved in the transaction. The savings and loan did not cancel the liens placed on the Bustamantes' home nor did it refund any monies to the borrowers.

Appellants then filed this suit, alleging nondisclosure violations and failure to comply with the rescission requirements of 15 U.S.C. § 1635. They sought damages and rescission of the transaction. The Bustamantes also tendered to the court the payments of the loan as they became due but did not tender the proceeds of the loan. The district court concluded that appellee was liable for damages under the Act for failing to state the correct annual percentage rate, but that all other disclosures was properly made. It also found that appellants were not entitled to the right of rescission since appellants failed to return any monies already advanced. On appeal, appellants argue that they are entitled to rescission, to forfeiture of the loan, and to a redetermination of attorney's fees.

*Right of Rescission*

Under 15 U.S.C. § 1635(a), when a security interest (other than a first lien to finance acquisition) is acquired in real property which is the residence of the person to whom credit is extended, the borrower has a right of rescission within three business days of either consummation of the transaction or "the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later . . . ." [1] *See also* 12 C.F.R. § 226.9.[2]

1. 15 U.S.C. § 1635(a) states:
   Except as otherwise provided in this section, in the case of any consumer credit transaction in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a trans-

action subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, an adequate opportunity to the obligor to exercise his right to rescind any transaction subject to this section.

2. 12 C.F.R. § 226.9(a) states:
   Right to rescind certain transactions.
   (a) General rule. Except as otherwise provided in this section, in the case of any credit transaction in which a security interest is or will be retained or acquired in any real property which is used or is expected to be used as the principal residence of the customer, the customer shall have the right to rescind that transaction until midnight of the third business day, following the date of consummation of that transaction or the date of delivery of the disclosures required under

In this case, the Bustamantes gave notice of rescission more than three days after consummation of the transaction. Therefore, the Bustamantes must show that First Federal failed to make "all other material disclosures" so that the three day period did not run. *See Gerasta v. Hibernia National Bank,* 575 F.2d 580, 583–84 (5th Cir. 1978); *LaGrone v. Johnson,* 534 F.2d 1360, 1362 (9th Cir. 1976). The trial court held that First Federal violated the Act, under 15 U.S.C. § 1640 [3] and 12 C.F.R. § 226.8(b)(2),[4] by failing to disclose the APR to the nearest quarter of one percent.[5] Although the disclosure statement indicated that the APR was 11.69%, the actual rate was 13%.

First Federal does not dispute this finding of a violation but argues that the lower court determined that the violation was not material and therefore appellants were not entitled to rescission.

■ Unlike the general civil liability section of the Truth-in-Lending Act, 15 U.S.C. § 1640, which provides for liability for any nondisclosure, the rescission provisions under 15 U.S.C. § 1635 require that the nondisclosure be material. Neither the statute, nor the regulations, nor the legislative history indicates what materiality means. Nor have we found any cases directly on point. Therefore, materiality must be de-

---

this section and all other material disclosures required under this part, whichever is later, by notifying the creditor by mail, telegram, or other writing of his intention to do so. Notification by mail shall be considered given at the time mailed; notification by telegram shall be considered given at the time filed for transmission; and notification by other writing shall be considered given at the time delivered to the creditor's designated place of business.

3. 15 U.S.C. § 1640 provides:
(a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—
(1) any actual damage sustained by such person *as a result of the failure;*
(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, or (ii) in the case of an individual action relating to a consumer lease under part E of this subchapter, 25 per centum of the total amount of monthly payments under the lease, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000; or
\* \* \* \* \* \*
(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. In determining the amount of award in any class action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and *the extent to which the creditor's failure of* compliance was intentional.

4. 12 C.F.R. § 226.8(b)(2) provides:
(b) Disclosures in sale and nonsale credit. In any transaction subject to this section, the following items, as applicable, shall be disclosed:

(2) The finance charge expressed as an annual percentage rate, using the term "annual percentage rate," . . ..

5. 12 C.F.R. § 226.5(b) provides;
(b) Except as otherwise provided in this section, the annual percentage rate applicable to any extension of credit, other than open end credit, shall be that nominal annual percentage rate determined as follows:
(1) In accordance with the actuarial method of computation so that it may be disclosed with an accuracy at least to the nearest quarter of 1 percent. *The mathematical equation and technical instructions for determining the annual percentage rate in accordance with the requirements of this paragraph are set forth in Supplement I to Regulation Z* which is incorporated in this part by reference. Supplement I to Regulation Z may be obtained from any Federal Reserve Bank or from the Board in Washington, D. C. 20551, upon written request.
\* \* \* \* \* \*
(2) *At the option of the creditor,* by application of the U. S. Rule so that it may be disclosed with an accuracy at least to the nearest quarter of 1 percent. Under this rule, the finance charge is computed on the unpaid balance for the actual time the balance remains unpaid and if the amount of a payment is insufficient to pay the accumulated finance charge, the unpaid accumulated finance charge continues to accumulate to be paid from the proceeds of subsequent payments and is not added to the amount financed.

termined in the context of the purpose behind the Act. The purpose of the consumer credit legislation is to promote the "informed use of credit" by "assur[ing] a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him . . . ." 15 U.S.C. § 1601. *See Smith v. Chapman*, 614 F.2d 968, 971 (5th Cir. 1980). A material disclosure, then, relates to information that would affect the credit shopper's decision to utilize the credit. See *Ivey v. United States Dep't of Housing and Urban Development*, 428 F.Supp. 1337, 1342–43 (N.D.Ga.1977), aff'd, 607 F.2d 1004 (5th Cir. 1979). *See also Harris v. Tower Loan of Mississippi, Inc.*, 609 F.2d 120, 122–23 (5th Cir. 1980) (understated finance charge is a material nondisclosure). Misstatement of the APR clearly could affect such a decision. *See Ljepava v. M.L.S.C. Properties, Inc.*, 511 F.2d 935, 941 (9th Cir. 1975) (right to rescission under Act when disclosure statement understated annual percentage rate).

■ First Federal argues that the omission of the APR was not material because the Bustamantes did not attempt to shop around for better credit rates and therefore they were not concerned with the APR. Even if this assessment of the Bustamantes' attitude is correct, to apply a subjective standard to the test for materiality would misperceive the remedial purpose of the Act. *See Cody v. Community Loan Corp. of Richmond City*, 606 F.2d 499, 506 (5th Cir. 1979); *Gerasta v. Hibernia National Bank*, 575 F.2d at 583. To apply a subjective standard would be to protect only the sophisticated credit shopper; such a standard would fail to protect the unsophisticated or uneducated consumer, or redress violations of the Act, and would not promote "the informed use of credit." *See Smith v. Chapman*, 614 F.2d 968, 971 (5th Cir. 1980) (well-settled that an objective standard is used in determining violations of the Truth-in-Lending Act; it is not necessary that the plaintiff-consumer actually have been deceived for there to be a violation). We apply, instead, an objective standard to determine the materiality question, based on what a reasonable consumer would find significant in deciding whether to use credit.

Using this objective standard, we find that misstatement of the APR was a material violation. The extent of the misstatement, 1.31%, considered in light of the amount of the loan, $9,800.00, is so significant that as a matter of law it would affect the credit decision of any reasonable consumer. *Cf. Harris v. Tower Loan of Mississippi, Inc.*, 609 F.2d at 122 (understated finance charge is a material nondisclosure); 12 C.F.R. 226.6(a) (finance charge and annual percentage rate must be disclosed more conspicuously than other required disclosures).

Although the trial court did not explicitly address the issue of materiality of the violation, it did hold that appellants had no right of rescission. Such a holding was clearly erroneous in view of the significant materiality of the understated APR.[6]

*Right to Forfeiture*

We have determined that the Bustamantes properly exercised their right to rescind the transaction, since the Bustamantes were not given an accurate disclosure of the APR. After the Bustamantes gave proper notice of rescission, First Federal did not perform its statutorily prescribed duties triggered by the notice under the Act, allegedly because the Savings and Loan Association was uncertain whether any error committed by it was a material violation under section 1635(a). The Bustamantes now argue that First Federal forfeited its right to recover the proceeds of the loan it had delivered to the borrowers because First Federal did not perform those duties. Because we find that the Bustamantes also did not perform their statutory duty to tender the monies already received, their forfeiture argument is without merit.

---

**6.** Because of our holding that the misstatement of the APR in this case was a material omission, we do not need to address the materiality of other disclosure violations alleged by the plaintiffs, namely, the adequacy of the identification of the creditor and of the liens acquired by the creditor.

■ The procedures for rescission are set forth in detail in 15 U.S.C. § 1635(b).[7] That section requires the creditor, within ten days after receiving notice of rescission, to return to the borrower all money received from the borrower and to take all necessary actions to reflect the termination of any security interest created under the transaction. Once the creditor has performed these duties, the borrower is required to tender any of the loan proceeds received from the creditor. *See Harris v. Tower,* 609 F.2d 120, 123 (1980); *Gerasta v. Hibernia,* 575 F.2d 580, 582–83 (5th Cir. 1978). The section is designed to restore the parties to the status quo as closely as possible. *Harris v. Tower, supra,* at 123; *Sosa v. Fite,* 498 F.2d 114, 119 (5th Cir. 1974).

■ Here, neither party performed its statutory duties. The appellants only tendered the monthly installment payments as they became due. This does not constitute tender of loan proceeds as contemplated by the statute, and, therefore, the ten day forfeiture provision was never triggered. *Cf. Sosa v. Fite,* 498 F.2d at 118–119. By so holding, we do not ignore the statutory language that contemplates a tender by the debtor *after* the creditor has performed his duties. *See Harris v. Tower, supra,* at 123; *Gerasta v. Hibernia National Bank, supra,* at 584. As previous decisions in this Circuit have indicated, this result is the correct means to insure compliance with the congressional purpose of restoring the parties to the status quo. *See Gerasta v. Hibernia National Bank, supra,* at 584. In *Gerasta,* the borrower expressly refused to tender

the creditor's property until the creditor had fulfilled its statutory obligations. We held, in that case, that the forfeiture provision would not be operative until ten days after the tender had been made. Here, the appellants did not actually refuse to tender but did not actually tender the loan proceeds required by the statute to trigger the forfeiture provision. *Cf. Sosa v. Fite, supra* (borrower expressly offered to make a proper tender, even though the creditors did not perform their statutorily prescribed duties after receiving notice of rescission; the consumer's obligation to restore the creditor to the status quo was discharged by the tender).

*Adequacy of Attorney's Fees*

■ A successful party is entitled to a reasonable attorney's fee for services rendered. 15 U.S.C. § 1640(a)(3). *See Gerasta v. Hibernia National Bank, supra,* at 584. The district court awarded $1,000.00 in fees. A claim for 76 hours of work was made, which would pay plaintiffs' attorneys at a rate of $13.16 per hour. On appeal, the Bustamantes contend that this amount was inadequate.

The district court failed to reveal how it determined the fee awarded. It is therefore impossible to review the award in any meaningful way. On remand, the district court should apply the factors stated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1975), and make a fair award. *See McGowan v. King, Inc.,* 616 F.2d 745 (5th Cir., 1980); *Gerasta v. Hibernia National Bank, supra,* at 584. The

---

7. 15 U.S.C. § 1635(b) states:

Return of money or property following rescission

When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within ten days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transac-

tion. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within ten days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it.

award should also include fees accrued in connection with this appeal. *See Thomas v. Myers-Dickson Furniture Co.*, 479 F.2d 740 (5th Cir. 1973).

REVERSED AND REMANDED.