**In the Matter of Ella Foster WRIGHT.**

**Ella Foster WRIGHT, Plaintiff,**

v.

**CREDITHRIFT OF AMERICA, INC., Defendant.**

**Bankruptcy No. 8002577JC.**
**Adv. No. 800198JC.**

United States Bankruptcy Court, S. D. Mississippi, Jackson Division.

May 21, 1981.

Charles H. Ramberg, Jackson, Miss., for plaintiff.

Vernon H. Chadwick, Jackson, Miss., for defendant.

## OPINION

BARNEY E. EATON, III, Bankruptcy Judge.

This adversary proceeding concerns the complaint made by Ella Foster Wright (hereafter "Wright") against Credithrift of America, Inc. (hereafter "Credithrift") under the Truth-in-Lending Act, 15 U.S.C. Section 1601 et seq. (hereafter "TILA") for statutory penalties and rescission of the loan transaction of 12 November 1979, in which Credithrift acquired a deed of trust security interest in Wright's principal residence. This Court has full jurisdiction pursuant to 28 U.S.C. Section 1471(c). Truth-in-Lending jurisdiction arises pursuant to 15 U.S.C. Sections 1635 and 1640, and 28 U.S.C. Section 1337. Credithrift ably and vigorously defended against Wright's allegations by way of Answer and Denial, but filed no counterclaim.

In support of her demand for statutory penalties and rescission, Wright alleged several TILA violations by Credithrift. Two of these she alleges to be "material," and this Court finds them to be so. Both violations arose in connection with Credithrift's sale to Wright of a credit life insurance policy in connection with the loan transaction, and including the $1,864.31 premium within the transaction amount financed instead of within the finance charge.

■ First, the disclosure statement stated that the term of the credit life insurance "will be for the term of credit unless otherwise shown." On the insurance certificate that Credithrift provided Wright, the term was shown to be "otherwise," namely an even 84 months, 4 days short of the full term of the loan, which extended from 12 November 1979 until 16 November 1986. Credithrift argues that a provision of the boilerplate "general provisions" of the insurance certificate avoids the apparent loan term/insurance term discrepancy by providing that "during the term of the indebtedness, the amount of insurance ... will be equal to the balance due on the unpaid indebtedness." However, that provision is contradicted by another general provision

of the boilerplate, which provides "the amount of insurance in force during the term specified above shall be the amount necessary at any time to discharge that portion of the indebtedness of the insured debtor to the creditor ..." The "term specified above" is 84 months, and not 84 months and 4 days. Given the conflict in the printed terms of the policy certificate, the typed term must govern. *Williams v. Reserve Life Insurance Company*, 223 Miss. 698, 78 So.2d 794 (1955). 43 Am.Jur.2d *Insurance* Section 267.

■ Credithrift argues further that the apparent discrepancy is excused by a requirement of a three day waiting period between the date of the transaction and the date the finance charge begins to accrue. There is no such requirement either in the Truth-in-Lending Act itself or in Federal Reserve Board Regulation Z.

Credithrift's failure to disclose that the term of credit life insurance was shorter than the term of the credit violated TILA and Regulation Z. *Reneau v. Mossy Motors*, 622 F.2d 192, 194–195 (5th Cir. 1980). *Luckett v. Tower Loan of Mississippi, Inc.*, Civil Action No. J79–0153(N) (S.D.Miss. 1980).

Credithrift's second material violation was its failure to conspicuously disclose that Wright had the right to refuse to purchase the credit life insurance that was offered her, a requirement imposed by Regulation Z (12 C.F.R.) Section 226.4(a)(5). In *Philbeck v. Timmers Chevrolet, Inc.*, 499 F.2d 971, 973, 978 (5th Cir. 1974), rehearing denied, 502 F.2d 1167 (1974), the Court of Appeals illustrated a sufficiently conspicuous disclosure. In *Smith v. Chapman*, 436 F.Supp. 58 (W.D.Tex.1977), the District Court, applying a closely analogous provision of the Texas Consumer Credit Code, found language insufficiently conspicuous when in the same size print and type as the rest of the writing, and there was nothing that would call a person's attention to the relevant clause. *Smith* at 64. *Smith* was affirmed on appeal to the Court of Appeals. 614 F.2d 968 (5th Cir. 1980). The Court in *Smith* held, in the absence of any definition

in TILA itself, or Regulation Z, that the Uniform Commercial Code definition of conspicuous should apply. A distinguished creditor-oriented commentator of TILA, Ralph Clontz, has suggested in his *Truth-in-Lending Manual* (Vol. 1, par. 2.06[1]) that the UCC definition of conspicuous ought to apply.

■ In this transaction, Credithrift's disclosure that credit life insurance was optional was not conspicuous. It was in the body of the form, buried near the bottom. The disclosure was not in capitals, was not in larger or other contrasting type or color, but rather was smaller than the type face used for most of the other disclosures made on the disclosure statement. Thereby, Credithrift was required to include the credit life insurance premium within the finance charge, and its failure to do so violated TILA and Regulation Z, and resulted in an understatement of the disclosed finance charge and annual percentage rate. *Gardner v. Tower Loan of Mississippi, Inc.*, Civil Action No. J80–0434(C) (S.D.Miss.1981). *Harris v. Tower Loan of Mississippi, Inc.*, 609 F.2d 120 (5th Cir. 1980).

■ The foregoing material violations each resulted in an understatement by nearly 5% of the true annual percentage rate, when the credit life insurance premium is deducted from the amount financed and added to the finance charge, and the Federal Reserve Board annual percentage rate tables are applied. An annual percentage rate understatement of nearly 5%, considered in the light of the loan amount in excess of $26,000, was clearly material. *Bustamante v. First Federal Savings and Loan Association of San Antonio*, 619 F.2d 360, 364 (5th Cir. 1980).

■ Under the principle of "materiality" laid down in *Bustamante*, Supra, and in *Davis v. Federal Deposit Insurance Corporation*, 620 F.2d 489 (5th Cir. 1980), this Court also finds that Credithrift committed a material TILA/Regulation Z by failure to clearly identify that the credit life insurance premiums were security in the subject transaction. Such a disclosure was required

by Regulation Z (12 C.F.R.) Section 226.-8(b)(5) and *Edmondson v. Allen-Russell Ford, Inc.*, 577 F.2d 291 (5th Cir. 1978). *Edmondson* has been recently reaffirmed by *Souife v. First National Bank of Commerce*, 628 F.2d 480 (5th Cir. 1980), but this Court notes that a decision is now pending by the United States Supreme Court on this identical issue in *Anderson Brothers Ford v. Valencia*. What collateral/security a creditor is taking in connection with a credit transaction can scarcely be less material to the customer in his shopping for credit that the true cost of the credit, and it follows that an omission of identification of collateral is thereby "material."

■ Credithrift urges this Court to reject Wright's rescission claim, alleging that her notification to Credithrift of her election to exercise the right of rescission was ineffective, and that she cannot rescind because she did not tender the loan proceeds. To the contrary, Wright's notification of her election to rescind was proper. She attached a copy of her notification, written in her behalf by her lawyer, to her complaint, and Credithrift admitted that the letter had been received by it. Credithrift's assertion that Ms. Wright would have to sign the notice herself in order for it to be effective misreads Federal Reserve Board interpretation 226.902 and would, if heeded by this Court, impose a harsh procedural requirement inconsistent with the remedial purpose of TILA. With regard to Credithrift's demand that Wright tender as a condition precedent to exercising her rescission right, it is sufficient here to note that such a requirement has been consistently expressly rejected by the Court of Appeals. *Bustamante* at 365, *Harris* at 123. Although stripping Credithrift of its secured creditor status will render it powerless to collect its debt, in the light of Wright's pending Bankruptcy Chapter 13 Case, the only TILA relief that she seeks here is cancellation of Credithrift's security interest and the finance charge imposed in connection with the subject transaction. *Williams v. Public Finance Corporation*, 598 F.2d 349 (5th Cir. 1979) makes it clear that a debtor may rely upon more than one

statutory remedy in defense of a creditor's demands.

■ Wright has assigned additional TILA violations which she concedes, and the Court agrees, are not material within the meaning of *Bustamante,* supra. Credithrift has confessed one of these, namely, that its failure to describe the type of security interest it was taking in its customer's automobile violated Regulation Z (12 C.F.R.) Section 226.8(b)(5). Credithrift relies upon the "clerical error" defense pursuant to 15 U.S.C. Section 1640(c) to avoid liability for this violation. It is undisputed that the error was not intentional, but the Court is not persuaded that Credithrift maintained procedures reasonably adapted to avoid such errors. Credithrift introduced proof to show that its clerks who prepared and reviewed the loan statement in the subject transaction were experienced and trained, but it was readily apparent that their training and experience had not made them knowledgeable in the admittedly difficult requirements of Truth-in-Lending compliance. From a truth-in-lending standpoint, its clerks were not well trained. Clearly, Credithrift was relying upon counsel to prepare fool-proof forms for use by its clerks. Had it also provided written checklists or guidelines for its clerks to use in spotting errors that could be expected to arise in the use of its forms, Credithrift's "clerical error" defense might have been persuasive. Credithrift made its error in the use of its own form in the subject transaction, and in another contemporaneous transaction as well. Yet, none of its checking procedures ever caught the error. Under all the circumstances, this error, the only one for which Credithrift claimed the "clerical error" defense, was not excusable because Credithrift did not maintain a procedure reasonably adapted to avoid such an error. *Mirabal v. General Motor Acceptance Corporation,* 537 F.2d 871, 876–879 (7th Cir. 1976).

■ Credithrift charged Wright $12.80 "recording or filing fees." This was presumably in reliance on Regulation Z (12 C.F.R.) Section 226.4(b)(1), which allows a creditor to exclude from the finance charge "fees and charges prescribed by law which actually are or will be paid to public officials for … perfecting or releasing … any security related to the credit transaction." The proof showed that Credithrift actually spent $6.10 in releasing two old deeds of trust on Wright's principal residence and in recording its own new deed of trust on her residence. Further, based upon charges previously made, Credithrift's estimate that an additional $1.20 would be expended to eventually release its deed of trust on Ms. Wright's residence was excludable from the finance charge by the regulation. Credithrift claimed that the rest of the $12.80 would be expended perfecting its security interest in Wright's automobile. However, the statutory fee for the title application which has the effect of perfecting a creditor's security interest in an automobile is $4.00. Section 63–21–63, Mississippi Code Annotated (1980). Since Credithrift could exclude from the finance charge only fees and charges prescribed by law paid or to be paid, it follows that the $1.50 difference between what is charged Wright and what it had paid and would be expected to pay public officials constituted a hidden finance charge. *Starks v. Orleans Motors, Inc.,* 372 F.Supp. 928 (E.D.La.1974), affirmed 500 F.2d 1182 (5th Cir. 1974).

■ Regulation Z (12 C.F.R.) Section 226.6(a) requires TILA disclosures to be made "in meaningful sequence." The meaningful sequence requirement is not defined by TILA or Regulation Z. However, both a Federal Reserve Board Public Position Letter (No. 780, 10 April 1974) and *Allen v. Beneficial Finance Company,* 531 F.2d 797 (7th Cir. 1976) support Wright's allegation that Credithrift defied logic with the manner by which it split the amount finance total from its components by inserting between them the disclosures of finance charge, total of payments and annual percentage rate. Where it could easily enough have provided the required disclosures with reasonable clarity, the creditor introduced confusion and thereby violated TILA and Regulation Z.

By way of relief, Wright is entitled to recover a statutory penalty of $1,000.00 against Credithrift pursuant to 15 U.S.C. Section 1640. Wright, however, shall pay the statutory penalty of $1,000.00 into the Chapter 13 trustee, to be distributed for the benefit of the general unsecured creditors. Pursuant to U.S.C. Section 1635, Wright is entitled to a judgment cancelling Credithrift's deed of trust acquired on her home pursuant to the loan transaction of 12 November 1979 and to cancellation of the finance charge in connection with the subject transaction. Additionally, Wright is entitled to recover her costs and reasonable attorney's fees for bringing this action. 15 U.S.C. Section 1640(a)(3) and *Sosa v. Fite*, 498 F.2d 114, 121–22 (5th Cir. 1974). Ruling on plaintiff's attorney's fees is reserved for disposition pursuant to the standards announced in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). Plaintiff's attorney is directed to furnish this Court with a judgment effectuating this Opinion within ten days following the rendition of this Opinion.