Tommy Lee SIMMONS and
Mamie Williams

v.

AMERICAN BUDGET PLAN, INC.

Civ. A. No. 73–1031.

United States District Court,
E. D. Louisiana.

Nov. 19, 1974.

Patrick D. Breeden, New Orleans, La., for plaintiffs.

G. Michael Grosz, III, New Orleans, La., for defendant.

BOYLE, District Judge:

Plaintiffs, Tommy Lee Simmons and Mamie Williams Simmons, instituted this action pursuant to the Consumer Protection Act, 15 U.S.C. § 1601 et seq. The basis of their complaint is that the defendant, American Budget Plan, Inc. (hereinafter American Budget), a finance company which made them a loan secured by a second mortgage on their home, failed to furnish the plaintiffs with the information required to be furnished them by the statute. Jurisdiction is conferred on the Court by 15 U.S.C. § 1640(e).

Prior to the trial of this action, plaintiff Tommy Lee Simmons died. His widow, Mamie Williams Simmons, as administratrix of his succession, was substituted for Tommy Lee Simmons as plaintiff. She also sues in her own right as plaintiff.

Plaintiff alleges the following violations of the Consumer Protection Act:

1. Defendant failed to disclose the notarial fee and cost of certificates and recordation.

2. Defendant failed to obtain the signature of the borrower accepting Credit Life Insurance and failed to disclose the cost and term of such insurance.

3. Defendant failed to disclose to the borrowers their right to rescind; and

4. Defendant failed to provide the borrowers with a copy of the Truth in Lending disclosures at the time of the transaction.

The following facts appear from the testimony and the record:

On March 12, 1973, plaintiffs Tommy and Mamie Simmons visited the office of defendant American Budget. They were accompanied by D. M. Greenup of D. M. Greenup Realty Co.[1] The purpose of their visit was to arrange to borrow $2,000.00 from American Budget, which sum was to be the down payment on a home they were buying located at 1812–14 Toledano Street. The Simmonses planned to make the home their principal place of residence, and Mrs. Simmons was in fact living there at the time of trial.

Defendant American Budget, in the ordinary course of its business regularly extends, offers to extend or arranges for the extension of credit of its customers, for which a finance charge is or may be collected.

While at American Budget, Mr. and Mrs. Simmons signed a mortgage in favor of defendant on the property at 1812–14 Toledano Street[2] and a $4,500.00 promissory note payable to bearer.[3] Tommy Simmons also signed a Federal Disclosure Statement[4] and a Notice of Right of Recission,[5] acknowledging receipt of a copy of both documents. Mamie Simmons did not sign either the disclosure statement or the recission notice.

The facts stated thus far are undisputed. On the question of whether Tommy Simmons was given a copy of the disclosure statement and the recis-

sion notice, the parties disagree. Mrs. Simmons testified that neither she nor her husband received copies of any loan documents before they left defendant's office; they were told they would receive the papers in the mail and they did in fact receive them by mail.

Peter Plaia, manager of American Budget, testified that he did give copies of both the disclosure statement and the recission notice to Mr. Simmons.

While plaintiffs were in the office of American Budget, defendant issued three separate checks payable to Mr. and Mrs. Simmons in the amounts of $2,000.00,[6] $53.36,[7] and $225.00.[8]

The check in the amount of $2,000.00 was to be used as the down payment on their home.

The check in the amount of $53.36 was for closing costs, according to Mr. Plaia. Mrs. Simmons testified that no one told her what that check was to be used for. She and Mr. Simmons endorsed the check in Mr. Plaia's presence. The sum of $53.36 is not specifically mentioned on the Federal Disclosure Statement, but Mr. Plaia testified it was included in the figure shown as "amount financed."

The plaintiffs also received and endorsed in Mr. Plaia's presence a third check for $225.00. Mrs. Simmons was told the sum was for insurance on her husband's life for the entire length of the note. A "credit life insurance charge" of $225.00 was shown on the Federal Disclosure Statement and was included in the figure shown as "amount financed" on the form.

In a separate section of the disclosure form, defendant indicated that the credit life insurance was not required in order to obtain the loan. The form contained a space for the borrower to sign to

---

1. D. M. Greenup, originally a defendant in this action, has been voluntarily dismissed by plaintiffs.

2. Exhibit P–2.

3. Exhibit P–1.

4. Exhibit P–3.

5. Exhibit P–4.

6. Exhibit P–5.

7. Exhibit P–6.

8. Exhibit P–7.

indicate that he voluntarily elected to purchase the insurance after he had been informed of the cost of the insurance. Neither Mr. Simmons nor Mrs. Simmons signed in the space provided.

The disclosure form reflected that the total of payments due on the plaintiffs' loan was $4,500.00. Of this amount, $2,221.64 was the finance charge, consisting solely of interest, and $2,278.36 was the amount financed, which included the down payment for the Simmonses' home, closing costs, and credit life insurance.

Plaintiffs were scheduled to pass the act of sale on their home thirty minutes after they appeared at American Budget's office, and they needed the $2,000.00 in order to pass the act of sale. Mr. Plaia testified that Mr. and Mrs. Simmons informed him there was an emergency need for the money, but made no written statement to that effect.

■ Plaintiffs allege that American Budget failed to properly disclose the notarial fee and fees for certificates and recordation in connection with the second mortgage by which the loan was secured. American Budget included the fee of $53.36 in a lump sum of $2,278.36 designated as "amount financed." The form does not itemize the various elements of the amount financed, and plaintiffs claim this is a violation of the statute and regulations.

We agree. While defendant was entirely correct in including the fee in the amount financed,[9] its duty to disclose did not end there. In addition to disclosing the total amount to be financed, it was also required to disclose:

". . . (1) The amount of credit of which the obligor will have the actual use, or which is or will be paid to him or for his account or to another person on his behalf.

(2) All charges, *individually itemized*, which are included in the amount of credit extended but which are not part of the finance charge."
15 U.S.C. § 1639(a)(1)(2) (Emphasis supplied).

Since defendant failed to individually itemize the various elements of the amount financed, it has violated the statute.

■ Plaintiffs next allege that the defendant failed to obtain the signature of the borrower accepting credit life insurance and failed to disclose the cost and term of such insurance.

It is apparent from an examination of the disclosure form that defendant did not secure the signature of the borrower accepting the optional insurance. As a consequence of this omission, the charge for credit life insurance must be included in the finance charge,[10] rather than in the amount financed, as disclosed on defendant's form.

Since the charge for credit life insurance was required to be included in the finance charge, this fact makes defendant's statement that the finance charge consisted solely of interest inaccurate. Since the creditor in the case of a consumer loan is required to itemize the various elements included in the finance charge,[11] defendant's failure to do so constitutes a violation of the regulations promulgated pursuant to the statute.[12]

Plaintiffs cite Philbeck v. Timmers Chevrolet, 361 F.Supp. 1255 (N.D.Ga. 1973) and Phillips v. Termplan of Atlanta, Inc., No. 18,300, N.D.Ga., November 6, 1973, CCH Consumer Credit Guide ¶ 98,841, for the proposition that defendant's failure to disclose the cost and term of insurance in the section of the form provided for the borrower to elect optional credit life insurance is a violation.

*Philbeck* is distinguishable on its facts, since in that case there was disclosure of the cost of optional credit

---

9. 15 U.S.C. § 1605(e)(2), (4) and 12 CFR 226.4(e)(2), (4).

10. 15 U.S.C. § 1605(b)(1), (2) and 12 CFR 226.4(5)(i)(ii).

11. 12 CFR 226.8(d)(3). For reasons to be discussed later, we find the exception provided in this regulation does not apply.

12. 15 U.S.C. §§ 1604, 1640(a).

life insurance in the section of the disclosure statement provided for the borrower to elect coverage. A reference on the disclosure statement directed the reader to the reverse of the statement, where the term of insurance coverage was disclosed. In this case, the cost of credit life insurance was disclosed at the top of the disclosure statement but the cost did not appear in the section provided for the borrower to elect coverage. The term of the credit life insurance was not disclosed on the disclosure statement at all and there was no reference to any other document which would indicate the term.

The plaintiff referred to the decision of the district court in *Philbeck* in support of his position. That decision has since been reversed by the Fifth Circuit; Philbeck v. Timmers Chevrolet, Inc., 499 F.2d 971 (5 Cir. 1974), and now does not support plaintiff's contention.

Phillips v. Termplan of Atlanta, Inc., supra, is also factually distinguishable. There, the cost of credit life insurance was shown at the top of the disclosure statement. In the box provided for the borrower to elect insurance coverage, located near the center of the page, the statement was made that coverage would be at the cost "shown above" for the term of credit. The disclosure of the cost of insurance in *Phillips* was identical to the method used here, but in this case the term of the insurance was not shown at all.

*Phillips* also relied in part on the district court's holding in *Philbeck*, since reversed. We find the remainder of the court's decision in *Phillips* is not compelled by either the statute, regulations or interpretations of the Federal Reserve Board and we, therefore, decline to follow *Phillips*.

The statute provides only that the creditor must disclose the amount of the finance charge in a consumer loan.[13] The regulations require only a description of each amount included in the finance charge.[14] And the Board regulations require disclosure of the term of insurance only when the cost of insurance is *not* required to be included in the finance charge.[15] For reasons stated above, the cost of credit life insurance *was* required to be included in the finance charge in this case. The insurance, not being optional and being required to be disclosed in the finance charge, we hold that defendant's failure to disclose the term of insurance was not a violation.

The court in *Phillips* held that the cost of credit life insurance must be shown in the special section of the form provided for the borrower to elect optional insurance coverage. It found that the creditor may not require the borrower to look elsewhere on the form for information about the cost of insurance. It based its conclusion not on specific statute or regulation, but on the purpose of the Consumer Credit Protection Act to facilitate comparison shopping for consumer credit [16] and on the possibility for confusion.

We find that defendant's form was sufficiently clear that minimal possibility of confusion existed. The special section of the form is headed "Credit Life and Disability Insurance" in all capital letters and in bold type. The statement for the borrower to sign reads, "I hereby, voluntarily elect to purchase Insurance, the type and cost of which is indicated above." Above, near the top of the form, in a special box labeled "Credit Life Insurance Charge", $225.00 is shown. In the next box labeled "Disability Insurance Charge", "none" appears. In the box labeled "Property Insurance Charge" is shown "none". We believe this arrangement conforms to the requirements of the statute. While

---

13. 15 U.S.C. § 1639(a)(4).

14. 12 CFR 226.8(d)(3).

15. 12 CFR 226.402(a).

16. 15 U.S.C. § 1601. See Thomas v. Myers-Dickson Furniture Co., 479 F.2d 740 (5 Cir. 1973) ; Ratner v. Chemical Bank New York Trust Co., 329 F.Supp. 270 (S.D.N.Y. 1971).

it is true that the statute is designed to protect the consumer and should be interpreted by the courts in light of this purpose,[17] it should not be used to penalize the creditor who has complied with the requirements of the statute. Accordingly, we find there was no violation with respect to disclosure of cost and term of credit life insurance.

▉ Plaintiff contends defendant failed to disclose to the borrowers their right to rescind the transaction.

The right of recission exists ". . . [in] any consumer credit transaction in which a security interest is retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended."[18] No right of recission exists where there is created or retained a first lien against a dwelling to finance the acquisition of that dwelling.[19]

We, therefore, find there was a right of recission in this case and both Mr. and Mrs. Simmons were entitled to notice of this right.[20]

It is undisputed that Mrs. Simmons did not sign the notice of recission. She denies having received a copy of the recission notice and defendant does not contradict her testimony. Defendant has violated the statute by failing to advise Mrs. Simmons of her right to rescind.

On the other hand, Mr. Simmons did sign the notice of recission and acknowledged receipt of a copy of it. Mr. Plaia states he gave a copy of the required notice to Mr. Simmons; Mrs. Simmons denies this.[21] We find that the presumption of delivery created by Mr. Simmons's written acknowledgment of receipt[22] has not been sufficiently rebutted, and accordingly, we find that Mr. Simmons did receive the required notice of recission.

Finally, plaintiff alleges that defendant failed to provide the borrowers with a copy of the Truth in Lending disclosures at the time of transaction.

▉ Both Mr. and Mrs. Simmons were entitled to the Truth in Lending disclosures.[23] For reasons stated above, we find Mr. Simmons did receive the disclosure statement but Mrs. Simmons did not receive it. Accordingly, defendant has committed a violation of the statute.

▉ We have found that defendant failed to include the charge for credit life insurance in the finance charge, failed to itemize elements of the finance charge, failed to notify Mrs. Simmons of her right to rescind the transaction, and failed to supply Mrs. Simmons with the Truth in Lending disclosure form, any one of which violations would subject the defendant to lia-

17. See Mourning v. Family Publication Service, Inc., 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973); Thomas v. Myers-Dickson Furniture, supra.

18. 15 U.S.C. § 1635(a).

19. 15 U.S.C. § 1635(e). It is undisputed that defendant intended to obtain and did obtain a second mortgage on the plaintiffs' home in order to secure their obligation. Presumably, Guaranty Homestead obtained a first mortgage on plaintiffs' home to secure the loan of the balance of the purchase price and it is to such a transaction that the exception in 15 U.S.C. § 1635(e) would apply.

20. 12 CFR 226.6(e).

21. Since Mr. Simmons is now deceased, his testimony on the question is unavailable.

22. 15 U.S.C. § 1635(c).

23. 12 CFR 226.6(e). See also Federal Reserve Board Advisory Letter of March 12, 1969, by Robert P. Forrestal, Assistant Secretary, *quoted in* CCH Consumer Credit Guide ¶ 30,006: ". . . The intent of both that section [226.6(e) of Regulation Z] and § 121 (b) of the Act is to specify that generally where there is more than one customer, the creditor need furnish a disclosure statement to only one of them. However, pursuant to the authority granted the Board in § 105 of the Act, an exception from this general rule was provided for rescindable transactions under § 226.9 of the Regulations since under that section each customer is individually entitled to rescind the transaction." See also Federal Reserve Board Advisory Letter of September 28, 1970, by Tynan Smith, Assistant Secretary, *quoted in* CCH Consumer Credit Guide ¶ 30,592.

bility. It is clear that as to closed end transactions involving only one borrower one statutory penalty will be assessed although more than one violation has occurred.[24]

It is not as clear whether more than one penalty should be assessed where violations have occurred with respect to more than one borrower.

The statute provides:

§ 1640. Civil liability—Failure to disclose

(a) Except as otherwise provided in this section, any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this part to be disclosed to that person is liable to that person in an amount equal to the sum of

(1) twice the amount of the finance charge in connection with the transaction, except that the liability under this paragraph shall not be less than $100 nor greater than $1,000; and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court.

A literal interpretation of the statute would seem to dictate that two penalties be assessed since defendant failed to disclose required information to two separate customers to whom it was required to disclose such information.

A special master in the Northern District of Georgia found the plaintiffs to be entitled to two penalties in Rivers v. Southern Discount Company Atlanta II, (No. 18,268, N.D.Ga., Report of Special Master, December 17, 1973).

In another case in the Northern District of Georgia, the district judge rejected the recommendation of the special master that two penalties be assessed for a Truth in Lending violation because two persons were liable on the loan. The court held that only one recovery was proper. Rivers v. Century Finance Company (No. 19,573, N.D.Ga., June 21, 1974), 4 CCH Consumer Credit Guide ¶ 98,771.[25]

Judge Rubin in another section of this Court found the plaintiffs were entitled to only one penalty in St. Marie v. Southland Mobile Homes, 376 F.Supp. 996 (E.D.La.1974). However, that case is distinguishable from this one because there only one creditor was entitled to be furnished a disclosure statement under 15 U.S.C. § 1631(b) and 12 CFR 226.6(e). In this case, both Mr. and Mrs. Simmons were individually entitled to a disclosure statement and to a recission notice because of the exception in 12 CFR 226.6. This was a transaction in which the right of recission existed; therefore, disclosure to one customer and not to the other who also enjoyed the right did not suffice.

Therefore, in accordance with the terms of 15 U.S.C. § 1640, plaintiff shall recover $1,000.00 in her own right against defendant and $1,000.00 as administratrix of her husband's estate. Additionally, plaintiff shall recover attorney's fees in the amount of $800.-00,[26] and costs. The Clerk shall enter judgment accordingly.

---

24. 15 U.S.C. § 1640. See Killings v. Jeff's Motors, 490 F.2d 865 (5 Cir. 1974); Starks v. Orleans Motors, 372 F.Supp. 928 (E.D. La.1974) aff'd per curiam 500 F.2d 1182 (5 Cir. 1974); Johnson v. McCrackin-Sturman Ford, Inc., 381 F.Supp. 153, W.D.Pa., 1974, *quoted in* CCH Consumer Credit Guide ¶ 98,805.

25. From the summary of the opinion, it is impossible to determine whether the case involved a rescindable transaction where both customers would be entitled to receive disclosures and recission notices.

See also Burrell v. City Dodge, Inc. (No. 18,739, N.D.Ga., June 21, 1974) CCH Consumer Credit Guide ¶ 98,764. The creditor was obliged to make disclosure to only one borrower in a multiple borrower transaction. One penalty was assessed.

26. The parties have stipulated this amount.