Charles E. ARNOLD, et al.,
Plaintiffs-Appellees,

v.

W.D.L. INVESTMENTS, INC., et al.,
Defendants-Appellants.

No. 81–3691.

United States Court of Appeals,
Fifth Circuit.

April 25, 1983.

Guy A. Modica, Susan Dowden, Baton Rouge, La., for defendants-appellants.

Spedale, Sanders, Pennington & Grimley, William D. Grimley, Baton Rouge, La., for plaintiffs-appellees.

Before GARZA, REAVLEY and GARWOOD, Circuit Judges.

GARZA, Circuit Judge:

For reasons essentially set forth in the district court's opinion, we affirm the present action. However, we address briefly certain issues raised by appellant as well as one issue, heretofore unaddressed, raised by this court *sua sponte.*

On May 10, 1977, defendants-appellants, W.D.L. Investments, Inc., Chester Rushing and Winans D. Lloyd (hereinafter WDL), sold to plaintiffs-appellees, Mr. & Mrs. Charles Arnold, a home located in a subdivision known as North Sherwood Estates in Baton Rouge, Louisiana. WDL was a developer of the subdivision. The principal financing for the purchase of the home was provided by Union Federal Savings and Loan of Baton Rouge who held as security a first mortgage on the home. WDL, however, aided the Arnolds in their purchase by providing additional financing which effectively provided the down payment for the transaction amounting to $11,200. In exchange for this additional financing, the Arnolds executed a collateral second mortgage on the home in favor of WDL. Along with the second mortgage, the Arnolds also signed two hand notes: one in the amount of $8,700 payable one year from date of purchase and the other in the amount of $2,500 payable in two years. The effect of these hand notes was to permit the Arnolds to defer making the full down payment on the home until two years after the sale. A subsequent agreement provided that no interest would be due on the notes if paid timely; however, if paid untimely, interest would accrue at 10% commencing from the date due.

On May 10, 1978, the Arnolds failed to make payment on the $8,700 note due. WDL subsequently brought suit in state court to recover on the first hand note. While this suit was pending, the second hand note became due. On May 10, 1979, the Arnolds tendered a check for $2,500, the amount due on the second hand note, to WDL. In a letter addressed to Samuel Cicero, the attorney representing defendants in the state court action, and WDL, the Arnolds offered to tender the remaining $8,700 due and exercised their right to rescind the loan transaction entered into with WDL. When WDL refused to rescind, the Arnolds brought suit claiming that WDL had violated the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.* After trial on the merits, judgment was rendered in favor of the Arnolds and against WDL, cancelling the promissory notes signed by the Arnolds on May 10, 1977, and ordering the sellers to cancel within 15 days from the date of the judgment the collateral mortgage recorded in the records of the clerk of the court for East Baton Rouge Parish. It is from this judgment that WDL now appeals.

Appellants first contend that the TILA is inapplicable to this transaction (1) because defendants, Rushing and Lloyd, are not creditors or arrangers of credit subject to liability under the TILA and (2) because the intent and purpose of the TILA would not be served by application to this proceeding. Regarding the former contention, we agree with the district court that Rushing and Lloyd fall within the definition for "creditor" and are subject to liability under the Act:

Chester Rushing and Winans D. Lloyd were at all times employees of WDL and were being compensated for their services. By offering to extend credit on behalf of WDL, Chester Rushing and Winans D. Lloyd became creditors as that

term is defined by 12 C.F.R. § 226.2(h) and (s).[1]

*See also, Eby v. Reb Realty, Inc.,* 495 F.2d 646, 649–50 (9th Cir.1974) (discussing the meaning of "creditor" under the Act).

■ Additionally, appellants assert that the purpose for which the TILA was enacted—to make consumers more aware of the cost of credit by requiring meaningful disclosures by creditors—is in no way advanced by the application of § 1635 (the rescission provision) to this proceeding. According to appellants, few if any other financial institutions would have loaned the Arnolds or anyone else money at no interest if paid timely as occurred in this case. WDL asserts that its actions did not constitute an extension of credit for which the Arnolds could readily compare other credit terms, and, therefore, the TILA should not apply. We have previously, however, rejected·the proposition that a subjective lack of awareness of credit terms somehow insulated a creditor from the provisions of the Act. *See Bustamante v. First Federal Savings and Loan Association of San Antonio,* 619 F.2d 360, 364 (5th Cir.1980).

■ Assuming the TILA is applicable, WDL next contends that the Arnolds failed to properly exercise their rescission remedy by failing to properly "notify" the sellers of their intention to rescind. In *Harris v. Tower Loan of Mississippi, Inc.,* 609 F.2d 120 (5th Cir.1980), we discussed the rescission remedy:

> Section 1635(b) of Title 15 controls the mechanics of rescission. It requires the creditor to return all funds or property advanced by the borrower within 10 days of receiving notice of rescission. The creditor is also required to take any action necessary to reflect the termination of any security interest created under the transaction. A failure to perform these duties within the 10 day period may result in the creditor incurring statutory damages under 15 U.S.C. § 1640(a) (1976)

in addition to the rescission remedy. *Gerasta v. Hibernia Nat'l Bank,* 575 F.2d 580, 583–84 (5th Cir.1978). Once the creditor has completed his obligations, it is incumbent upon the obligor to return any value received from the creditor. *Id.* at 123 (footnote omitted). WDL contends that the letter sent by the Arnolds to the attorney representing WDL in the state court suit on the $8,700 promissory note was insufficient notice of rescission under the Act. We do not believe the Act should be so narrowly construed to the detriment of the consumer-debtor. In this regard, we again adopt the district court's conclusion:

> In this case, plaintiffs rescinded the $8,700.00 loan by letter to the defendant's attorney, Samuel R. Cicero, and they rescinded the $2,500.00 loan by delivering a check to Mr. Cicero and informing him at that time of their intention to rescind. The clear intention of the statute and regulations are to make sure that the creditor gets notice of plaintiffs' consumer intention to rescind. After reviewing the entire record in this case and considering the fact that the Truth in Lending Act is to be construed liberally in favor of the consumer, *Thomas v. Myers-Dickson Furniture Company,* 479 F.2d 740 (5 Cir.1973), the Court finds that the methods chosen by the plaintiffs to rescind the two loans were proper herein.[2]

■ Appellants finally contend that since rescission under the TILA is an equitable remedy, it should not be invoked where a mistake, if in fact one occurred, was made in good faith and was purely technical. As authority for the proposition, appellants rely on this court's decisions in *Bustamante v. First Federal Savings and Loan Association of San Antonio, supra,* and *Harris v. Tower Loan of Mississippi, Inc., supra.* In so arguing, appellants further contend that the strict interpretation of the statute in *Sosa v. Fite,* 498 F.2d 114 (5th Cir.1974), is no longer controlling.

---

1. *Arnold v. W.D.L. Investments, Inc.,* No. 79–297–B (M.D.La. Oct. 20, 1981) at 3 (Finding of Fact # 15).

2. *Arnold v. W.D.L. Investments, Inc., supra,* note 1, at 7.

We find nothing, however, in either *Bustamante* or *Tower Loan* which authorizes this court to judicially carve out an equitable exception to the TILA (as it applied prior to the 1980 amendments). Furthermore, in *Tower Loan,* we expressly reaffirmed "the statutory language and the holding" in *Sosa,* a case with which this court and judge are intimately familiar. This contention, therefore, is without merit.

■ Finally, we turn to an issue which this court has raised *sua sponte.* We must consider whether or not the rescission remedy under § 1635 can be applied to just the second mortgage transaction in this case rather than the entire credit sale of the home. A conclusion that the transactions cannot be separated would require us to reverse the district court since it would be indisputable that plaintiffs would have failed to properly exercise their rescission remedy by requesting rescission of the entire sale. After oral argument and supplemental briefing by the parties, we conclude that two separate transactions were involved in this case and that plaintiffs could properly rescind just the second mortgage transaction. We believe our conclusion is supported by the statutory language and interpretation of § 1635, by case law as well as by policy considerations.

Section 1635(a) of Title 15 applies to this transaction pursuant to the pre-1980 amendments when it read as follows:

> Except as otherwise provided in this section, *in the case of any consumer credit transaction* in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, *the obligor shall have the right to rescind the transaction* until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later, by notifying the creditor, in accordance with regulations of the Board,

of his intention to do so. (Emphasis added.)

Under a literal reading of the statute, we must determine whether one or two "consumer credit transactions" were involved when the sale of the house financed through loans secured by first and second liens occurred. The statute in this regard is not very helpful. The regulations provide that "[u]nless the context indicates otherwise, ... 'transaction' [shall be construed] to mean 'consumer credit transaction.'" 12 C.F.R. § 226.2(jj) (1978 & 1982). A "credit sale" simply "refers to any sale with respect to which credit is extended or arranged by the seller." 15 U.S.C. § 1602(g). Neither of these definitions significantly aids in resolution of the question before us.

We do note, however, that on its face the statute distinguishes between the first mortgage transaction and the second mortgage transaction. Section 1635(e) of Title 15, prior to the 1980 amendments, provided that the rescission remedy "[did] not apply to the creation or retention of a first lien against a dwelling to finance the acquisition of that dwelling ...." It has been noted that the statute itself was designed primarily to deal with second mortgage and home improvement credit transactions. *See Houston v. Atlanta Federal Savings and Loan Association,* 414 F.Supp. 851, 854 (N.D.Ga.1976). Additionally, no one can dispute that the second mortgage transaction, by itself, was individually subject to scrutiny under the TILA for compliance with the various disclosure requirements. Thus, we conclude that practically the statute can only be read to permit, in a situation such as the present, rescission of either the second mortgage transaction only or the entire sale.

Our conclusion is similarly supported by the informal letters issued by the staff of the Federal Reserve Board. While such letters are not binding upon a court, they do represent informed and persuasive authority to which a court may look for guidance. *Eby v. Reb Realty, Inc., supra,* 495 F.2d at 650. In the most recent letter addressing this issue which our research uncovered, the Board concluded that a buyer could rescind just the second transaction:

Your first question is whether a buyer in a transaction [where a mortgage lender held the second mortgage and a third party held the first mortgage (both given to finance the purchase of a home)] would have the right to rescind the 5% loan [that is, the second mortgage transaction] and second trust deed under § 226.9. Since a security interest will be acquired in real property expected to be used as the principal residence of the buyer, § 226.9(a) makes the right of rescission available, unless one of the exceptions set forth in § 226.9(g) is applicable. The exception specified in § 226.9(g)(1), namely, the "creation, retention, or assumption of a first lien or equivalent security interest to finance the acquisition of a dwelling in which the customer resides or expects to reside," applies to the 75% loan and first trust deed. However, the 5% loan and second trust deed transaction would not fall within this exception, since no "first lien or equivalent security interest" is involved. None of the other exceptions listed in § 226.9(g) appear to be applicable either. Therefore, the buyer would have the right to rescind the 5% loan and second trust deed.

FRB Letter from Jerauld Kluckman, Associate Director, September 23, 1977 [Truth in Lending—Special Release Correspondence April 1969—October 1978] Consumer Credit Guide, CCH ¶ 31,708. This language is similarly consistent with that found in another staff letter which concluded:

When the second-mortgage transaction results in a lien on the borrowers principal residence, the second-mortgage is subject to the right of rescission as outlined in § 226.9 [¶ 3585] of Regulation Z.

FRB Letter from Milton W. Schober, Assistant Director, September 9, 1969 [Truth in Lending—Special Release Correspondence April 1969—October 1978] Consumer Credit Guide, CCH ¶ 30,157.[3]

Our conclusion that the first and second mortgage transactions can be separated is similarly supported by case law. Initially, we note that we have uncovered no case which explicitly holds that the obligor-buyer cannot rescind just the second mortgage transaction with the seller, but must instead rescind the entire transaction involving the home purchase. In *Simmons v. American Budget Plan, Inc.,* 386 F.Supp. 194 (E.D.La.1974), the question arose as to whether the creditor violated the TILA in failing to furnish one co-debtor with notice of the right to rescission. Plaintiffs had co-signed a note and used the money received thereon as down payment for the purchase of a home. The note was secured by a second mortgage. The court found that a right of rescission arose in each debtor and that failure to notify each debtor individually violated the TILA. The importance of *Simmons* presently rests in the court's assumption that such rescission right existed with respect to the second mortgage transaction itself. Indeed, the court ex-

---

**3.** Language in at least two FRB Letters appears at first to be inconsistent with our conclusion. *See* FRB Letter from Milton W. Schober, Assistant Director, January 13, 1970 [Truth in Lending—Special Release Correspondence April 1969—October 1978] Consumer Credit Guide, CCH ¶ 30,263; FRB Letter from Griffith L. Garwood, Attorney, December 30, 1969 [Truth in Lending—Special Release Correspondence April 1969—October 1978] Consumer Credit Guide, CCH ¶ 30,245. These letters use virtually identical language and state in part:

It is our opinion that the right to rescind the transaction in § 226.9 relates to the credit sale transaction and not just to the second mortgage itself.

First, we note that the primary question in both letters concerns the effect which rescission of the entire credit sale transaction (that is, both mortgages) would have on the first lien of the institutional lender whose security is not subject to the provisions of the TILA. The Board ultimately concluded that state real property law would govern. Second, we note that one letter was written by the same attorney who only four months previously had stated that rescission of the second mortgage was possible. We believe the letters can be reconciled by our conclusion that the obligor-buyer ultimately has the option of rescinding either or both transactions when the seller has financed and holds the second lien. Third, we note that the September 23, 1977, letter quoted in text is more recent; and it more precisely and substantially addresses the issue presented to us. Thus, to the extent that the prior letters are inconsistent, we believe they have been superceded.

pressly found that under § 1635(e) the holder of the first mortgage was excepted. 386 F.Supp. at 200 & n. 19.

In *Littlefield v. Walt Flanagan and Company,* 498 F.2d 1133 (10th Cir.1977), the seller took a second lien on property purchased by plaintiffs for use as a residence. As in the present case, the purchasers had given the seller a promissory note as part of the purchase price. In *Littlefield,* the court held that the statute of limitations provision ·of § 1640(e) did not bar rescission sought by plaintiffs under § 1635. Although the facts are somewhat unclear, plaintiffs apparently successfully rescinded just the second mortgage transaction.

While we admit that case law with respect to this issue is sparse and for the most part minimally precedential, we believe that policy considerations further support our conclusion today. It is arguable that the rescission remedy, as applied in the present case, provides the buyer with little relief since, in effect, his exercise of the rescission right requires him to tender back to the seller the very sum whose payment he has agreed to defer until a later date. Nevertheless, various considerations support a conclusion that such a scenario is consistent with the Act. First, the consumer, at his discretion, has the option of exercising the rescission right; he may decide not to exercise his right where such is not to his advantage. If indeed the buyer can obtain better financing elsewhere, he may obtain such financing and tender the proceeds back to the original second lienholder. Thus, by rescinding just the second lien, the buyer retains the home with the benefits of the financing supplied by the first lienholder and new second lienholder. On the other hand, the buyer may simply choose to rescind the entire sale; such a result is consistent with the TILA's policy of protecting the consumer and construing the act in his favor. Finally, the TILA also provides the buyer with various supplemental remedies including statutory damages under 15 U.S.C. § 1640. We are thus convinced that our construction of the TILA today is consistent with its remedial purpose.[4]

In conclusion, we find no ground upon which appellants are entitled to relief. In this case, the Arnolds notified WDL of their intention to rescind the second mortgage transaction and they tendered or offered to tender back the proceeds of their loans. The Arnolds were entitled to cancellation of the promissory notes and the collateral mortgage. WDL refused to honor the Arnolds' request. Under *Sosa v. Fite, supra,* WDL thus forfeited its right to the proceeds tendered previously by the Arnolds. With respect to the district court's denial of attorney's fees to the plaintiffs-appellees, we find no abuse of discretion under the Act as it existed at that time.

AFFIRMED.

---

4. We do not speak to the situation where the first lien is not a part of the sales transaction giving rise to the purchase money second lien held by the creditor-seller, such as the situation where a debtor-buyer acquires a residence "subject to but not assuming" an existing first lien against the seller and gives a second lien to the seller-creditor. In such a situation the first lien exemption of former section 1635(e) may not be implicated, and the language of former section 1635(b) could be argued to indicate that the entire sale (that is, the buyer's purchase of the home "subject to" the first lien and the second lien providing for the additional purchase price) must be rescinded.