**In re Joseph A. DUFFY, Leslie K. Duffy, Debtors.**

**John BOYAJIAN, Trustee, Plaintiff,**

**v.**

**FINANCEAMERICA CORPORATION, Defendant.**

**Bankruptcy No. 8000043.
Adv. No. 800077.**

United States Bankruptcy Court, D. Rhode Island.

August 5, 1983.

John Boyajian, Boyajian, Coleman & Harrington, Providence, R.I., Trustee, plaintiff.

William C. Hillman, Jay R. Katznelson, Strauss, Factor, Hillman & Lopes, P.C., Providence, R.I., for defendant.

### DECISION ON TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

The trustee brought a complaint alleging that the defendant, FinanceAmerica Corp., violated certain disclosure provisions of the Truth in Lending Act (TILA), 15 U.S.C.

§ 1601 *et seq.*, and Regulation Z, 12 C.F.R. Part 226. The matter was heard on the trustee's motion for summary judgment. Since the parties stipulate, and the Court agrees, that there is no genuine issue of material fact, the proceeding is "ripe for summary disposition." *United Nuclear Corp. v. Cannon,* 553 F.Supp. 1220, 1226 (D.R.I.1982); *see* Bankruptcy Rule 7056; Fed.R.Civ.P., Rule 56. The alleged violations occurred in November 1979; accordingly, the 1980 Truth in Lending Simplification Act, which amended TILA in many respects, is not applicable to this case.[1]

The trustee alleges that FinanceAmerica "understated the finance charge in the amount of $97.43 by failing to include therein the charges for credit life insurance and credit disability insurance which were paid by the [debtors]." Trustee's Memorandum at 2. Regulation Z, 12 C.F.R. § 226.4 (1981)[2] provides in pertinent part:

> § 226.4 *Determination of finance charge.*
>
> (a) *General rule.* Except as otherwise provided in this section, the amount of the finance charge in connection with any transaction shall be determined as the sum of all charges, payable directly or indirectly by the customer, and imposed directly or indirectly by the creditor as an incident to or as a condition of the extension of credit, whether paid or payable by the customer, the seller, or any other person on behalf of the customer to the creditor or to a third party, including any of the following types of charges:
>
> . . . .
>
> (5) Charges or premiums for credit life, accident, health, or loss of income insurance, written in connection with any credit transaction unless
>
> (i) The insurance coverage is not required by the creditor and this fact is

clearly and conspicuously disclosed in writing to the customer, and

> (ii) Any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance.

On November 20, 1979 the debtors executed a combined disclosure statement and "Voluntary Insurance Requisition" in connection with a loan agreement with the creditor, FinanceAmerica. The trustee alleges that this form fails in several respects to meet the requirements of TILA and, specifically, of Regulation Z, § 226.-4(a)(5), and that FinanceAmerica's failure to comply with these provisions results in a misstatement of actual interest charges. It is undisputed that charges of $31.88 for credit life insurance and $65.55 for credit disability insurance are not included in the listed finance charge of $340.71 or in the annual percentage rate, which is stated as 20.99%. These costs are required to be included in the finance charge and annual percentage rate unless the requirements of § 226.4(a)(5) have been met.

## I. AFFIRMATIVE WRITTEN INDICATION OF DESIRE FOR INSURANCE

Regulation Z (12 C.F.R.) § 226.4(a)(5)(ii) provides that

> [a]ny customer desiring such insurance coverage [must give] specific dated and separately signed written affirmative indication of such desire after receiving written disclosure to him of the cost of such insurance.

The trustee contends that FinanceAmerica has violated this requirement because "[t]he insurance authorization itself has no place where the customer can indicate specifically what insurance he wishes to purchase." Trustee's Memorandum at 12. The autho-

---

1. The Truth in Lending Simplification Act (also known as the Truth in Lending Simplification and Reform Act) was enacted in 1980 and became fully effective on April 1, 1982. The 1980 Act is not retroactive. *Wright v. Tower Loan of Mississippi, Inc.,* 679 F.2d 436, 439 (5th Cir. 1982).

2. All references to the Truth in Lending Act and to Regulation Z are to provisions in effect in November 1979, the time of the alleged violations.

rization portion of the form (which is reproduced in full as an appendix to this decision) provides as follows:

Voluntary Insurance Requisition:

In connection with my (our) request for a loan from your company, I (we) hereby elect to have the Lender obtain Credit Life, Joint Life or Credit Life (Joint Life) and Credit Disability insurance coverage for which a charge is shown above as additional security for this loan. The cost of such insurance was disclosed to me (us) in advance of my (our) signing this request.

The charges for credit life and credit disability insurance appear in boxes at the top of the form. The issue is whether this method of disclosing the costs of insurance violates Regulation Z or TILA.

In support of their respective positions, the trustee and FinanceAmerica refer to various opinion letters from the Federal Reserve Board. The Supreme Court has held that

caution requires attentiveness to the views of the administrative entity appointed to apply and enforce a statute. And deference is especially appropriate in the process of interpreting the Truth in Lending Act and Regulation Z. Unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive....

*Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 565, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980). With respect to unofficial opinion letters, courts have disagreed as to the deference to be accorded. The Sixth Circuit Court of Appeals has held that

[t]he Board's letters, while not binding on the Court, represent an informed opinion by the agency charged with implementing the TILA and should be treated as persuasive authority.

*Rudisell v. Fifth Third Bank,* 622 F.2d 243, 250 (6th Cir.1980). In contrast, another court has concluded that "[a]dvisory letters represent only the informed view of a particular official ... which the Court is not bound to follow." *Hensley v. Granning & Treece Loans, Inc.,* 378 F.Supp. 841, 844

(D.Or.1974) (citation omitted). Nevertheless, the same court held that "in 'interpreting administrative regulations whose meaning is in doubt, we must necessarily look to the construction given the regulation by the agency responsible for its promulgation.'" *Id.* (quoting *Bone v. Hibernia Bank,* 493 F.2d 135 (9th Cir.1974)). When the rationale for advisory opinions, including official staff interpretations, is weak or absent entirely, some courts—including this one— have chosen not to follow such opinions. *See, e.g., Boyajian v. Kingstown Furniture Co. (In re Maxwell),* 22 B.R. 958, 960 n. 5 (Bkrtcy.D.R.I.1982).

At issue in the case at bar is both the interpretation of, and the weight to be accorded to, FRB Public Information Letter No. 1234 (September 2, 1977). The letter itself states that it is an "unofficial staff interpretation" and "is limited in its application to the facts and issues set forth herein." *Id.* The letter states that three previous Public Information Letters, which required that the cost of insurance be included in the authorization itself, "are hereby superseded." *Id.* We agree with this Public Information Letter in its statement that there is no requirement that the cost of insurance premiums be included within the authorization, and we therefore reject the trustee's argument that failure to include the cost of insurance in the authorization section constitutes a violation of TILA.

Much of the remainder of Public Information Letter No. 1234 is not as lucid or definitive. At one point, the letter states that "if the creditor can show that there has been written disclosure of the cost [of insurance] prior to the customer's signing of the authorization, then the requirements of § 226.4(a)(5) regarding cost disclosure have been met." *Id.* In the case at bar the cost of insurance has been typed or printed on the form, and there is no dispute that the figures were placed on the form prior to the debtors' signing the authorization section. This letter goes on to state, however, that under some circumstances a "mere signature" may be insufficient as the "affirma-

tive written indication" called for in § 226.-4(a)(5)(ii). *Id.* The letter then states that [w]here written cross references are used to specify which type of coverage is desired, the authorization must make it clear how the referencing system works, where the customer is to specify the coverage desired, and what the signature on the authorization indicates is being requested.

*Id.* It is unclear whether the reference on FinanceAmerica's form to "insurance coverage for which a charge is shown above" satisfies these criteria. Accordingly, rather than relying on Public Information Letter No. 1234, an unofficial staff interpretation limited to a specific factual situation, for a definitive interpretation of the "affirmative written indication" required by § 226.-4(a)(5)(ii), we turn to case law.

In *Ballew v. Associates Financial Services Co.,* 450 F.Supp. 253 (D.Neb.1976), the court found that "[t]he disclosures of § 226.-4(a)(5) were complied with" when a loan disclosure statement "included a section dealing with the authorization of credit insurance." *Id.* at 264–65. "At the close of this boxed-off section is a place for the borrower's signature and the date with the preface, 'I hereby request the lender to procure the credit insurance coverage or coverages checked above.'" *Id.* at 264.

Similarly, in *Simmons v. American Budget Plan, Inc.,* 386 F.Supp. 194 (E.D.La.1974), the court found no TILA violation when [t]he statement for the borrower to sign reads, "I hereby, voluntarily elect to purchase Insurance, the type and cost of which is indicated above." Above, near the top of the form, in a special box labeled "Credit Life Insurance Charge", $225.00 is shown. In the next box labeled "Disability Insurance Charge", "none" appears. In the box labeled "Property Insurance Charge" is shown "none". We believe this arrangement conforms to the requirements of the statute. While it is true that the statute is designed to protect the consumer and should be interpreted by the courts in light of this purpose, it should not be used to penalize the

creditor who has complied with the requirements of the statute. Accordingly, we find there was no violation with respect to disclosure of cost and term of credit life insurance.

*Id.* at 199–200 (footnote omitted).

It is noteworthy that both the *Ballew* and *Simmons* cases antedate Public Information Letter No. 1234, and it is uncertain whether those courts would have found compliance with TILA and Regulation Z if they had followed the interpretation set forth in Letter No. 1234. In one recent decision the Fifth Circuit Court of Appeals cited this Public Information Letter in holding that disclosures made by cross-references to other documents "comply with Regulation Z if they are written and arranged properly." *Wright v. Tower Loan of Mississippi, Inc.,* 679 F.2d 436, 443 (5th Cir.1982). Such generalization fails completely to enlighten this Court on the subject, and makes obvious the fact that the law is currently unsettled as to the extent to which cross-referencing such as that employed in the instant case by FinanceAmerica is permissible. Fortunately, we need reach no conclusion regarding the alleged violation. Because we grant the trustee's motion for summary judgment on other grounds, we do not decide whether Regulation Z (12 C.F.R.) § 226.4(a)(5)(ii) was violated with respect to the requirement of an affirmative written indication of the customers' desire for insurance. Instead, we are able to dispose of the Motion for Summary Judgment on clearer grounds.

## II. CLEAR AND CONSPICUOUS DISCLOSURE

Regulation Z, § 226.4(a)(5)(i) requires that if charges for credit life and disability insurance are excluded from the finance charge, there must be a clear and conspicuous written disclosure to the customer that such insurance is not required. The trustee alleges that "[n]owhere in this section entitled 'Voluntary Insurance Requisition' is there any reference whatsoever to the fact that the insurance coverage is not required by the creditor." Trustee's

Memorandum at 5. This portion of the form reads:

Voluntary Insurance Requisition: [3]

In connection with my (our) request for a loan from your company, I (we) hereby elect to have the Lender obtain Credit Life, Joint Life or Credit Life (Joint Life) and Credit Disability insurance coverage for which a charge is shown above as additional security for this loan. The cost of such insurance was disclosed to me (us) in advance of my (our) signing this request.

Immediately above this statement the debtors affixed their signatures, and they also signed immediately below the insurance authorization statement. The trustee contends that the term "voluntary" (and presumably the term "elect" as well) "obviously does not suffice to 'clearly and conspicuously' disclose to the customer that the insurance coverage is not required as an incident to the extension of credit." Trustee's Memorandum at 6 n. 4. The Court agrees with the argument that this part of the form, when read in isolation, does not clearly and conspicuously [4] disclose that the insurance is not required, and therefore the remaining portion of the disclosure and authorization form must be considered. In the middle of the form, following the required disclosure material and preceding the "Voluntary Insurance Requisition," are four brief paragraphs. The first paragraph

clarifies the terms "Finance Charge" and "Loan Proceeds"; the second discusses the consequences of default; and the last two paragraphs, reprinted here, discuss insurance:

Borrower acknowledges that prior to the consummation of this loan, he has received a copy of this statement which hereby informs him that any Credit Life or Credit Disability insurance written in connection with this loan is not required by the Lender and is optional with the Borrower. The term and amount of insurance, if any, will correspond with the total of payments and term of this agreement.

Where dual signatures appear under the Voluntary Insurance Requisition and a charge is reflected above for Credit Life, it is understood that coverage is for Joint (Spouse) Credit Life Insurance.

Following these two paragraphs is a blank space, below which the debtors affixed their signatures. Immediately below these signatures is the "Voluntary Insurance Requisition" portion of the form, again followed by the debtors' signatures. The "Voluntary Insurance Requisition" paragraph must be read in conjunction with the third of the four preceding paragraphs in order to disclose clearly to the average consumer that credit life and credit disability

3. The heading "Voluntary Insurance Requisition" is in the same size print as the language used in the four preceding paragraphs and in the succeeding authorization statement.

4. FinanceAmerica's disclosure is not "clear and conspicuous" under the Uniform Commercial Code definition of these terms, as some courts have interpreted the U.C.C. requirement. *See Smith v. Chapman*, 436 F.Supp. 58, 64–65 (W.D.Tex.1977) (citing cases holding that "conspicuous" language must be in larger or contrasting print, or in different color), *aff'd,* 614 F.2d 968 (5th Cir.1980). The trustee concedes, however, that the U.C.C. definition of "clear and conspicuous" does not necessarily control in an action under TILA, and we find no support in the legislative history for the argument that to be clear and conspicuous, a disclosure must be in contrasting print type or color.

The Court also rejects FinanceAmerica's argument that the controlling definition of "clear

and conspicuous" is that provided by a December 1981 Official Staff Commentary on amended § 226.5(a)(1), which became effective April 1, 1981 with compliance optional until October 1, 1982. The Official Staff Commentary provides as follows:

The "clear and conspicuous" standard requires that disclosures be in a reasonably understandable form. It does not require that disclosures be segregated from other material or located in any particular place on the disclosure statement, or that numerical amounts or percentages be in any particular type size.

In the absence of any argument by FinanceAmerica why this Court should adopt as controlling a commentary on a regulation not in existence at the time of the alleged violation, the Court has no choice but to reject the proffered definition of the "clear and conspicuous" standard.

insurance are not required by FinanceAmerica as part of the loan transaction.

FinanceAmerica has not offered a cogent explanation for the placing of two paragraphs that pertain to the insurance authorization in the portion of the form that is devoted primarily to disclosures regarding terms of the loan. Regulation Z provides that required disclosures must be not only clear and conspicuous but "in meaningful sequence." 12 C.F.R. § 226.6(a). In the absence of either an expressed reason or any apparent logic for placing the statement that credit life and disability insurance are "not required" and are "optional" in the middle of the third paragraph of the disclosure section of the form, and outside the "Voluntary Insurance Requisition" portion of the form, the burden is on FinanceAmerica to demonstrate that despite this curious placement, the disclosure is clear, conspicuous, and in meaningful sequence.

In *Allen v. Beneficial Finance Co.,* 531 F.2d 797, 801 (7th. Cir.), *cert. denied,* 429 U.S. 885, 97 S.Ct. 237, 50 L.Ed.2d 166 (1976), the Court of Appeals for the Seventh Circuit discussed the "meaningful sequence" requirement:

> Thus, meaningful sequence first requires groupings of logically related terms. Second, meaningful sequence requires that the terms in these groupings be arranged in a logically sequential order emphasizing the most important terms.

The general rule that required disclosures be made "clearly, conspicuously, in meaningful sequence," 12 C.F.R. § 226.6(a), "is designed to insure that the disclosures follow a logical order and are not scattered throughout the agreement." *Basham v. Finance America Corp.,* 583 F.2d 918, 926 (7th Cir.1978), *cert. denied sub nom. DeJaynes v. General Finance Corp.,* 439 U.S. 1128, 99 S.Ct. 1046, 59 L.Ed.2d 89 (1979). Another court which analyzed the "meaningful sequence" requirement found that "[w]here it could easily enough have provided the required disclosures with reasonable clarity, the creditor introduced confusion and thereby violated TILA and Regulation Z."

*Wright v. Credithrift of America, Inc.,* 11 B.R. 590, 594 (Bkrtcy.S.D.Miss.1981).

A primary function of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to . . . avoid the uninformed use of credit," 15 U.S.C. § 1601(a), and this "concept of 'meaningful disclosure' . . . animates TILA." *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 568, 100. S.Ct. 790, 798, 63 L.Ed.2d 22 (1980).

In light of this purpose, and recognizing that TILA is "to be liberally construed in favor of borrowers," *Bizier v. Globe Financial Services, Inc.,* 654 F.2d 1, 3 (1st Cir. 1981), the Court concludes that FinanceAmerica violated the requirements of Regulation Z, 12 C.F.R. § 226.4(a)(5)(i) and § 226.-6(a) in that the disclosure that the insurance was not required was not made clearly, conspicuously, and in meaningful sequence. These disclosures could easily have been presented in a more logical and comprehensible format, and FinanceAmerica's failure to do so suggests either intentional obfuscation or a less than diligent attempt to comply with TILA and Regulation Z.

## III. DAMAGES

The Court also agrees that TILA "is intended to balance scales thought to be weighed in favor of lenders and thus is to be liberally construed in favor of borrowers." *Bizier v. Globe Financial Services, Inc.,* 654 F.2d 1, 3 (1st Cir.1981). Furthermore, we cannot accept FinanceAmerica's contention that if a relatively minor violation is found, we should be guided by cases such as *Dixey v. Idaho First National Bank,* 505 F.Supp. 846 (D.Idaho 1981), which urge that technical defects be overlooked. FinanceAmerica's counsel is apparently unaware that *Dixey* was reversed, and we follow the reasoning of the Ninth Circuit Court of Appeals in reversing the district court. *See* 677 F.2d 749 (9th Cir.1982). Neither are we persuaded by FinanceAmerica's argument that we should in effect reject as a precedent the decision of the First Circuit Court of Appeals in *Bizier v. Globe Financial Services, Inc., supra,* and adopt the reasoning of the Supreme Court

of Kansas in *Super Chief Credit Union v. Gilchrist,* 232 Kan. 40, 653 P.2d 117 (1982). The *Super Chief* case, which takes equitable considerations into account and considers whether the lender has been misled or damaged, *id.* 653 P.2d at 122–23, is at odds with our understanding of TILA, which provides incentives for private enforcement of the Act. *Bizier,* 654 F.2d at 2.

■ Having determined that a disclosure violation exists, the trustee's motion for summary judgment is granted, and 15 U.S.C. § 1640(a) requires that damages be assessed.[5] There is no allegation of "actual damage sustained" by the debtors, § 1640(a)(1), and damages are therefore twice the amount of the finance charge for each debtor,[6] § 1640(a)(2)(A)(i), plus the costs of the action and reasonable attorney fees, § 1640(a)(3). The finance charge here is $340.71. In addition, because the requirements of 12 C.F.R. § 226.4(a)(5)(i) have not been met, the charges of $31.88 for credit life insurance and $65.55 for credit disability insurance must be included within the finance charge. Accordingly, the total finance charge of $438.14 is doubled, resulting in damages of $876.28 for each of the two debtors. The trustee shall submit an application for counsel fees and costs within ten days.

Enter judgment accordingly.

## APPENDIX

FEDERAL DISCLOSURE STATEMENT

---

**5.** 15 U.S.C. § 1640 has been amended by Pub.L. 96–221, Title VI, § 615, 94 Stat. 180 (1980), effective October 1, 1982. Among other changes, Pub.L. 96–221 amends § 1640 to provide that when there are multiple obligors in a consumer credit transaction, there shall be no more than one recovery of damages under § 1640(a)(2). This amendment was not in effect at the time of the violations, and the unamended version of § 1640 therefore applies.

**6.** Each co-obligor is entitled to a separate award of damages. *Tarplain v. Baker Ford, Inc.,* 466 F.Supp. 1340 (D.R.I.1979), *rev'd on other grounds,* 618 F.2d 94 (1st Cir.1980); *Boyajian v. Avco Loan & Investment Co. (In re Cardillo),* 19 B.R. 400 (Bkrtcy.D.R.I.1982). *See supra* note 5 (provision for separate damage awards amended by Pub.L. 96–221).

504

Where dual signatures appear under the Voluntary Insurance Requisition and a charge is reflected above for Credit Life, it is understood that coverage is for Joint (Spouse) Credit Life Insurance.

Voluntary Insurance Requisition

In connection with my (our) request for a loan from your company, I (we) hereby elect to have the Lender obtain Credit Life, Joint Life or Credit Life (Joint Life) and Credit Disability insurance coverage for which a charge is shown above as additional security for this loan. The cost of such insurance was disclosed to me (us) in advance of my (our) signing this request

Witness

Witness

Borrower's Signature          11-20-79
                              Date

Borrower's Signature          11-20-79
                              Date

BORROWER'S COPY: Deliver to Borrower before any loan documents are signed.