In re Christine KELLER, Debtor.

Christine KELLER, Plaintiff,

v.

FIDELITY CONSUMER DISCOUNT COMPANY, Defendant.

Bankruptcy No. 82–00395G.
Adv. No. 82–2293G.

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 9, 1983.

Irv Ackelsberg, Community Legal Services, Inc., Philadelphia, Pa., for debtor/plaintiff, Christine Keller.

Frank Federman, Philadelphia, Pa., for defendant, Fidelity Consumer Discount Co.

James J. O'Connell, Philadelphia, Pa., trustee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

At issue in the case at bench are the motions of both the plaintiff and the defendant for summary judgment based upon the plaintiff's complaint for alleged violations of the Truth in Lending Act, ("the Act"), 15 U.S.C. § 1601, et seq., and § 9504 of the Uniform Commercial Code ("UCC") of Pennsylvania. For the reasons stated herein we will grant in part the defendant's motion.

Under Fed.R.Civ.P. 56(c) which is applicable in this proceeding by virtue of Bankruptcy Rule 7056, summary judgment may be entered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The courts "are to resolve any doubts as to the existence of genuine issues of fact against the moving parties." *Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 405 (3d Cir.1981); *Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir.1981).

The undisputed facts of this case are as follows: The son of the debtor, Christine Keller ("the debtor"), sought to purchase a 1973 model automobile on credit with the funds of the defendant, Fidelity Consumer Discount Company ("Fidelity"). Fidelity lent the necessary funds to the debtor and her son on April 17, 1978, in exchange for a security interest in the car and a second mortgage on the debtor's residence. The balance due on the loan was refinanced by the three parties on February 7, 1980, with the son receiving $37.62 in "fresh cash." Due to the son's subsequent default on the loan Fidelity repossessed the auto in January and sent notice of repossession to the son, but not to the debtor. The notice stated that the car could be redeemed by payment of the outstanding debt although it did not state the time and place where the car would be auctioned if the son failed to redeem it. Upon said failure to redeem the vehicle, it was sold at auction for $100.00 in February of 1981.

In October of 1981 Fidelity instituted foreclosure proceedings against the debtor's mortgage. A default judgment was entered shortly thereafter and a sheriff's sale was scheduled. Through counsel, the debtor sent Fidelity notice on December 28, 1981, that she intended by that document to rescind her 1980 loan agreement with Fidelity due to alleged violations of the Act. Fidelity ignored the notice. The debtor then filed a petition for relief under chapter 13 of the Bankruptcy Code on February 1, 1982, which stayed the sheriff's sale. In this proceeding Fidelity has filed a proof of claim against the debtor for $3,994.62 based upon her guarantee of her son's debt. The debtor has objected to the proof of claim and has commenced the instant adversary proceeding to implement her purported right of rescission under the Act.

The Act is a federal statute which regulates the terms and conditions of consumer credit. Its congressionally declared purpose is to assure the informed use of credit through a meaningful disclosure of credit terms so that consumers can more readily compare different financing options and costs. 15 U.S.C. § 1601. For all loans

which fall within its purview the Act requires the creditor to issue the debtor a disclosure statement summarizing certain information bound in the loan documents. The information which must be disclosed is defined in the Act and Regulation Z, 12 C.F.R. § 226.1, *et seq.* Upon a creditor's failure to make the necessary disclosure, the Act provides a debtor with several remedies among which is the right, under certain circumstances, to rescind a consumer credit transaction in which the debtor has granted a security interest in his primary dwelling. 15 U.S.C. § 1635(a). Transactions in which the debtor granted a security interest to finance the acquisition or initial construction of the dwelling are exempted from the rescission provisions as are certain other transactions. § 1635(e) and (e)(1); 15 U.S.C. § 1602(w). The rescission period extends from the time of the consummation of the loan agreement until midnight of the third business day following such consummation. § 1635(a). The three-day period does not begin to run until the creditor has provided the debtor with all the necessary disclosures, although no rescission can be effected more than three years after the execution of the loan regardless of the lack of proper disclosure. *Id.;* § 1635(f). Rescission cannot be implemented unless the disclosure is materially deficient. § 1635(a); *Bustamente v. First Federal Savings & Loan Assoc.,* 619 F.2d 360, 363 (5th Cir.1980).

■ In particular, the Act requires the disclosure statement to contain a description of all security interests granted by the loan documents. 15 U.S.C. § 1639.[1] The regulations require that the "type of any security interest held or to be retained" must be disclosed. 12 C.F.R. § 226.8(b)(5) (1980). The debtor asserts that although the disclosure statement indicated that the creditor was retaining a "security interest" in her home it failed to identify the type of interest, i.e., a mortgage. The regulations

in effect at the time of the refinancing define a security interest as follows:

(gg) "Security interest" and "security" mean any interest in property which secures payment or performance of an obligation. The terms include, but are not limited to, security interests under the Uniform Commercial Code, real property mortgages, deeds of trust, and other consensual or confessed liens whether or not recorded, mechanic's, materialmen's, artisan's, and other similar liens, vendor's liens in both real and personal property, the interest of a seller in a contract for the sale of real property, any lien on property arising by operation of law, and any interest in a lease when used to secure payment or performance of an obligation.

12 C.F.R. § 226.2(gg) (1980). A mortgage is clearly identified as a security interest and both terms necessarily connote the creditor's right of recourse against the subject property in the event of default on the loan. The use of the term "mortgage" would have added little if anything to the value of the disclosure statement. As stated in *Bustamante, supra,* a failure to disclose is not material unless it "would affect the credit shopper's decision to utilize the credit." 619 F.2d at 364. Under this standard we find that Fidelity's failure to disclose the exact nature of the security interest could not have been material and thus we will grant the defendant's motion for summary judgment on this issue.

■ The Act also requires the disclosure statement to contain an itemized list of certain charges. As stated in part in 15 U.S.C. § 1639:[2]

(a) Any creditor making a consumer loan or otherwise extending consumer credit in a transaction which is neither a consumer credit sale nor under an open end consumer credit plan shall disclose each of the following items, to the extent applicable:

---

1. Section 1639 was repealed by the Truth in Lending Simplification and Reform Act, Pub.L. 96–221, 94 Stat. 168 (1980). The parties are in apparent agreement that § 1639 is applicable to the case at bench since the refinancing occurred prior to the repeal.

2. See note 1.

(1) The amount of credit of which the obligor will have the actual use, or which is or will be paid to him or for his account or to another person on his behalf.

(2) All charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge.

(3) The total amount to be financed (the sum of the amounts referred to in paragraph (1) plus the amounts referred to in paragraph (2)).

\* \* \* \* \* \*

The debtor asserts that a $159.22 charge listed in longhand on the disclosure statement as "Lt. Chg." apparently refers to "Late Charge" but is not clearly labeled and thus is not adequately itemized within the meaning of § 1639(a)(2). Although the sum is probably sufficiently identified as a "late charge" we need not reach this issue since the debtor's reliance upon § 1639(a)(2) is misplaced. This subsection only requires itemization for charges which *are* included in the amount of the credit extended but which *are not* part of the finance charge. The disclosure statement reveals that the late charge was included in the finance charge and thus did not have to be specifically itemized. Since this sum augmented the finance charge, the interest rate on the loan necessarily reflected this inclusion. This interest rate [3] is comparable to the interest rate of every other loan governed by the Act. Thus, the debtor's contention that the failure of Fidelity to itemize properly the $159.22 charge "rendered impossible an informed comparison of the terms of the Fidelity loan to other sources of credit" is without foundation. Consequently, we will grant Fidelity's motion for summary judgment on this issue.

■ The debtor's final basis for relief under the Act is an alleged failure to compute properly the interest rate of the loan. The debtor concedes that relief on this allegation can only be granted upon the intro-

duction of evidence not currently of record. Thus, summary judgment on this issue would be improper and both parties' motions for such relief will be denied.

Lastly, the debtor asserts that after repossession of her son's auto Fidelity failed to inform her of the impending sale of the vehicle in violation of § 9504 of the Pennsylvania UCC which states in pertinent part as follows:

Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods, no other notification need be sent.

3 Pa.Cons.Stat. § 9504. The debtor contends that violations of § 9504(c) can be redressed under 13 Pa.Cons.Stat. § 9507(a) which states in part as follows:

§ 9507. Liability of secured party for failure to comply with chapter

(a) General rule.—If it is established that the secured party is not proceeding in accordance with the provisions of this chapter disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this chapter. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus 10% of the principal amount of the debtor or the time price differential plus 10% of the cash price.

---

**3.** The interest rate is more commonly known as the A.P.R. (Annual Percentage Rate) which is

determined according to 15 U.S.C. § 1606.

In the case at bench the son is the primary obligor on the indebtedness while the debtor is the guarantor. Neither party has addressed the propriety of awarding damages to a surety under §§ 9504(c) and 9507(a). Consequently, we will deny the motions for summary judgment on this issue.